**Daniel J. TRIERWEILER, Plaintiff–Appellant,**

v.

**CROXTON AND TRENCH HOLDING CORPORATION, a Delaware corporation; Dublin Osaka Group, Inc., a Nevada corporation; R&B Financial Group, a Texas corporation; Columbus Equities International, Inc., formerly known as**

---

Parsons Securities, Inc., an Ohio corporation; Monetary Fund, Inc., a Texas corporation; Charles W. Trench; Benjamin C. Croxton, an individual; Ralph Ben–Schoter; Gary S. Okizaki, an individual; Margaret E. Kerr, an individual; Steven Kerr, an individual; Edward R. Lucero, an individual; Leo Copeland, an individual; Steven W. Kochensparger, an individual; Martin Howard Corsberg, an individual; U.S. Monetary Fund, Inc., a Texas corporation; Herbert Watkins, Defendants,

and

Wenner, Silvestain & Company, a Colorado partnership; John D. Brasher, Jr., an individual; James G. Watt, an individual; Stephen L. Wenner; Gary P. Saltzman; Lawrence L. Greenberg; Barry H. Silvestain, Defendants–Appellees,

and

Machol, Davis & Michael, P.C.; James A. Kaplan, an individual, Defendants–Third–Party–Plaintiffs–Appellees,

and

Robert Cooper, Thomas C. Clinton, Third–Party–Defendants.

Daniel J. TRIERWEILER,
Plaintiff–Appellant,

v.

MACHOL, DAVIS & MICHAEL, P.C., formerly known as Machol & Machol, P.C., a Colorado corporation; James A. Kaplan, Wenner Silvestain & Company, a Colorado general partnership; John D. Brasher, Jr., Defendants–Appellees.

Nos. 94–1514, 94–1522.

United States Court of Appeals,
Tenth Circuit.

July 29, 1996.

Rehearing Denied Sept. 6, 1996.

Michael Thomas Gilbert (Robert E. Youle with him on the briefs), of Williams, Youle & Koenigs, P.C., Denver, Colorado, for Plaintiff–Appellant Daniel J. Trierweiler.

John R. Mann of Kennedy & Christopher, P.C. (Elizabeth A. Starrs and Matthew S. Feigenbaum of Kenney and Christopher, P.C.; Robert S. Treece and Michael L. Hutchinson of Treece, Alfrey & Musat, P.C.; and John D. Brasher, Jr., pro se, with him on the brief), Denver, Colorado, for Defendants–Appellees Wenner, Silvestain & Co., et al., Machol, Davis & Michael, P.C., James A. Kaplan, and John D. Brasher, Jr.

William P. Schwartz of Ranck & Schwartz, Jackson, Wyoming, for Defendant–Appellee James G. Watt.

Before BRISCOE, SETH * and LUCERO, Circuit Judges.

LUCERO, Circuit Judge.

Plaintiff-appellant Daniel J. Trierweiler loaned Croxton and Trench Holding Corporation ("C&T") $1.2 million. The debtor defaulted, and Trierweiler seeks to recover his investment. Following two unsuccessful lawsuits before the United States District Court for the District of Colorado, Trierweiler appeals the dismissal of several of his claims for failure to comply with Colorado's certificate of review requirement and for lack of personal jurisdiction over one defendant. He also appeals the district court's grant of summary judgment on statute of limitations grounds favoring one defendant in his first lawsuit, and all defendants in his second lawsuit. We affirm in part and reverse in part.[1]

**I**

In July 1989 Daniel Trierweiler loaned $300,000 to C&T in order to fund a new subsidiary called Aesir Securities, Inc. ("Aesir"). Later that year, C&T asked Trierweiler to loan it an additional $900,000. C&T offered to have Dublin Osaka Group, Inc. ("Dublin") and R&B Financial Group, Inc. ("R&B") guarantee the loans. C&T would pay the guarantors to execute an Unconditional Guaranty, which represented that they would repay the $1.2 million if C&T defaulted, and a Security Agreement Governing Bonds, which secured the Guaranty with over $1.2 million in GNMA bonds. Before he would invest any more in C&T, however, Trierweiler insisted that Dublin provide him with legal opinions on (1) the perfection of uncertificated securities under Colorado law, and (2) Dublin's legal capacity to enter into the proposed agreements. When these opinions were provided, Trierweiler agreed to the deal.

On November 30, 1989, Dublin and R&B executed the Unconditional Guaranty and Security Agreement Governing Bonds, and Trierweiler and C&T entered a new loan agreement in which Trierweiler refinanced his first loan and loaned an additional $900,000, based on assurances that the entire investment

---

* The late Honorable Oliver Seth did not participate in the final decision in this case.

1. In addition, defendants Wenner and Watt moved to strike certain parts of the record. We GRANT these motions.

would be secured. At this point, Trierweiler had invested $1.2 million into the C&T/Aesir venture.

In January 1990 C&T defaulted on the loans, and Dublin subsequently failed to honor its guaranty. Trierweiler claims he then discovered that neither Dublin nor R&B had ever owned the GNMA bonds, and since then he has been unable to recover most of his losses. Trierweiler claims that "each appellee here played a key role in inducing [him] to make the investment." Appellant's Opening Br. at 5. Following is a description of each appellee's alleged role, and a summary of the litigation resulting from the default.

### Watt

In early 1989, former Secretary of the Interior James G. Watt agreed to join a new investment banking firm, C&T, in an "of counsel" capacity and as chairman of the firm's advisory board. Watt owned equity in the firm and was to receive a share of its profits.

According to Trierweiler, Watt called to persuade him to invest in C&T, in order to get Aesir off the ground. Specifically, Watt said C&T constituted a good investment; that Watt had chosen "sharp people" to run C&T; and that Watt was participating in and overseeing C&T. Based on these representations, Trierweiler loaned C&T the initial $300,000. After the first loan, Trierweiler claims Watt called him again to encourage further investment.

### Machol and Kaplan

Dublin retained the Denver law firm of Machol, Davis & Michael ("Machol") to write an opinion letter on the issue concerning perfection of uncertificated securities under Colorado law. James Kaplan, a Machol associate, prepared the letter, which affirmed that Trierweiler could obtain an enforceable perfected security interest in the GNMA bonds under the terms of the Guaranty and the Security Agreement. Trierweiler claims that Kaplan negligently failed to confirm

whether Dublin owned the bonds, tell Trierweiler that he had not done so, or tell Trierweiler that it was necessary to confirm ownership.

### Brasher

Dublin's general counsel, John D. Brasher, Jr., prepared an opinion letter on the issue of Dublin's authority to carry out its obligations as guarantor. Brasher wrote that Dublin did in fact have the authority to fulfill its duties under the Unconditional Guaranty and Security Agreement. Trierweiler claims that Brasher's letter falsely represented that Dublin had the authority to pledge its bonds and honor its Guaranty.

### Wenner and the Wenner Partners

In addition to the Machol and Brasher opinion letters, Trierweiler also claims he relied on an audit of Dublin performed by the accounting firm of Wenner, Silvestain & Company ("Wenner").[2] Wenner's audit incorrectly stated that Dublin owned the GNMA bonds. Trierweiler claims that Brasher sent this audit to Trierweiler's attorney, who relied on it in advising Trierweiler to enter the loan agreement. In addition, Wenner consented to the use of its audit as part of Dublin's SEC registration statement.

### Procedural History

In November 1991 Trierweiler instituted a lawsuit in the United States District Court of the Western District of Michigan, asserting charges of negligent misrepresentation, fraud and other claims against Watt, Machol, Kaplan, Wenner, Brasher, C&T, Dublin, R&B, and other defendants (*"Trierweiler I"*).[3] In January 1993 the case was transferred to the United States District Court in Colorado, and in June 1993 Trierweiler added the individual Wenner Partners as defendants. In June 1994 Judge Weinshienk of the Colorado district court entered an order (1) granting summary judgment to the Wenner Partners based on Colorado's statute of limitation; (2)

---

**2.** This opinion distinguishes between "Wenner" (the company) and the "Wenner Partners" (the individual partners of that company).

**3.** Watt, Brasher, Machol, Kaplan, Wenner, and the Wenner Partners are the only defendants still involved in this litigation.

dismissing plaintiff's claims against Wenner, the Wenner Partners, Machol, Kaplan and Brasher for failure to file a timely certificate of review; and (3) dismissing the claims against Watt for lack of personal jurisdiction.

In July 1994 Trierweiler sued Brasher, Machol, Kaplan and Wenner again, for negligent misrepresentation (*"Trierweiler II"*). The district court granted summary judgment in favor of all defendants on the basis of Colorado's statute of limitations.

*Trierweiler I* and *Trierweiler II* have been consolidated on appeal.

## II

Preliminarily, we must resolve a choice of law question: whether Michigan or Colorado law applies to Trierweiler's claims. First, we analyze which forum's choice of law principles apply to each defendant. We then determine which state's substantive law applies under the appropriate choice of law rules.

### A

■ Generally, a federal trial court sitting in diversity applies the forum state's choice of law. *Klaxon Co. v. Stentor Elec. Mfg. Co.,* 313 U.S. 487, 496, 61 S.Ct. 1020, 1021–22, 85 L.Ed. 1477 (1941); *TPLC, Inc. v. United Nat'l Ins. Co.,* 44 F.3d 1484, 1490 (10th Cir. 1995). However, where a case is transferred from one forum to another under 28 U.S.C. § 1404(a), as here, then the transferee court must follow the choice of law rules of the transferor court. *Van Dusen v. Barrack,* 376 U.S. 612, 635–37, 84 S.Ct. 805, 818–20, 11 L.Ed.2d 945 (1964).

■ Some circuits have created an exception to this exception: where the case has been transferred but the transferor court lacked personal jurisdiction over the defendant(s), then the transferee's choice of law rules apply. *Davis v. Louisiana State Univ.,* 876 F.2d 412, 414 (5th Cir.1989) (per curiam); *Muldoon v. Tropitone Furniture Co.,* 1 F.3d 964, 967 (9th Cir.1993). This is so even when the case was transferred under 28 U.S.C.

§ 1404(a)—purportedly for convenience—rather than 28 U.S.C. § 1406(a)—for improper venue—so long as the transfer did in fact cure a jurisdictional defect. *Davis,* 876 F.2d at 414; *Muldoon,* 1 F.3d at 967.[4] We find that this rule sensibly discourages forum-shopping; it prevents a party from filing in a district that lacks jurisdiction to hear his or her case in order to receive the benefit of that forum's law. To discern which state's choice of law rules apply, then, we must first determine whether Michigan had personal jurisdiction over the defendants.

■ In diversity cases, federal courts have in personam jurisdiction as permitted by state law, consistent with the Fourteenth Amendment's due process requirement. *Dobbs v. Chevron U.S.A., Inc.,* 39 F.3d 1064, 1067 (10th Cir.1994). Michigan's long-arm statutes have been interpreted as exercising the broadest grant of jurisdiction consistent with constitutional due process requirements. *Michigan Nat'l Bank v. Quality Dinette, Inc.,* 888 F.2d 462, 464 (6th Cir.1989); *LAK, Inc. v. Deer Creek Enters.,* 885 F.2d 1293, 1298 (6th Cir.1989).

■ In *International Shoe Co. v. Washington,* the Supreme Court held that:

> due process requires only that in order to subject a defendant to a judgment in personam, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.

326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945) (quotations omitted). The *International Shoe* "minimum contacts" standard may be met in either of two ways. Specific jurisdiction—based on a matter occurring in the forum state—exists when the defendant "purposely avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws." *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 1240, 2 L.Ed.2d 1283

---

**4.** The Michigan court declined to determine whether 28 U.S.C. § 1404(a) or 28 U.S.C. § 1406(a) provided it with authority to transfer. *Trierweiler v. Croxton and Trench Holding Corp.,* No. 1:91–CV–932, slip op. at 5–6 (W.D.Mich. Jan. 6, 1993). For our purposes, the district court's characterization of the transfer is not controlling. *Muldoon,* 1 F.3d at 967.

(1958). General jurisdiction lies when the defendant's contacts with the forum state are so "continuous and systematic" that the state may exercise personal jurisdiction over the defendant, even if the suit is unrelated to the defendant's contacts with the state. *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 415–16 & n. 9, 104 S.Ct. 1868, 1872–73 & n. 9, 80 L.Ed.2d 404 (1984). In either case, the court must see to it that the exercise of jurisdiction " 'does not offend traditional notions of fair play and substantial justice.' " *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 292, 100 S.Ct. 559, 564, 62 L.Ed.2d 490 (1980) (quoting *International Shoe,* 326 U.S. at 316, 66 S.Ct. at 158) (further quotation omitted). Our review of the district court's jurisdictional determinations is de novo. *Williams v. Bowman Livestock Equip. Co.,* 927 F.2d 1128, 1130 (10th Cir.1991).

### Brasher

■■■■ United States Magistrate Judge Abram of the District of Colorado recommended that the Colorado District Court find that Michigan had specific personal jurisdiction over defendant Brasher. The magistrate's recommendations explicitly ordered the parties to file objections within ten days, after which the district judge could accept the findings and enter an order in accordance with them. Brasher did not object. It is settled Tenth Circuit law that when a party fails to object to the magistrate's findings and recommendations within the appropriate time, he or she waives the right to appellate review. *Moore v. United States,* 950 F.2d 656, 659 (10th Cir.1991).[5]

### Machol and Kaplan

Trierweiler contends that Michigan had both specific and general jurisdiction over Machol and Kaplan, who prepared an opinion letter for Dublin upon which Trierweiler allegedly relied. The district court concluded that Michigan lacked jurisdiction and therefore Colorado choice of law applied. We agree with the district court.

■■■■ Michigan law provides that when a corporation conducts a "continuous and systematic part of its general business" in Michigan, the state has general personal jurisdiction over the corporation. Mich. Comp. Laws § 600.711(3). The "continuous and systematic" threshold tracks the language of *Helicopteros,* 466 U.S. at 416, 104 S.Ct. at 1873 (general jurisdiction arises when foreign corporation's contacts with forum state are "continuous and systematic"). In order for general jurisdiction to lie, a foreign corporation must have a substantial amount of contacts with the forum state. 4 Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1067, at 298 (2d ed.1987). In assessing contacts with a forum, courts have considered such factors as: (1) whether the corporation solicits business in the state through a local office or agents; (2) whether the corporation sends agents into the state on a regular basis to solicit business; (3) the extent to which the corporation holds itself out as doing business in the forum state, through advertisements, listings or bank accounts; and (4) the volume of business conducted in the state by the corporation. *Id.* at § 1069, at 348–55 (collecting cases).

■■■■ Machol is a Colorado firm with no Michigan office or agent. Trierweiler has neither alleged that Machol held itself out as doing business in Michigan through ads or listings, nor claimed that Machol's attorneys had any regular presence in Michigan. Machol claimed that it was not "qualified to transact business in the state of Michigan" during the relevant period. Machol did represent 24 Michigan residents on 104 matters during this period. However, it was not asserted that any of this business was conducted in Michigan, and none of the other factors which are normally considered in making "continuous and systematic" determinations are implicated here. Machol's connection to Michigan does not allow an exercise of general jurisdiction.

■■■■ Trierweiler also claims Michigan had specific jurisdiction. Michigan may as-

---

5. Brasher appears pro se. The waiver rule generally does not apply to pro se litigants if the magistrate fails to apprise the parties of the consequences of a failure to object. *Moore,* 950 F.2d at 659. However, here the magistrate's warning was clear, and the waiver rule applies.

sert specific jurisdiction over an out-of-state defendant who has not consented to suit there if the defendant "has purposefully directed his activities at residents of the forum, and the litigation results from alleged injuries that arise out of or relate to those activities." *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 472, 105 S.Ct. 2174, 2182, 85 L.Ed.2d 528 (1985) (quotations and citations omitted). In the context of an interstate contract, parties who "reach out beyond one state and create continuing relationships and obligations with citizens of another state" are subject to jurisdiction in the other state. *Id.* at 473, 105 S.Ct. at 2182 (quoting *Travelers Health Ass'n v. Virginia,* 339 U.S. 643, 647, 70 S.Ct. 927, 929, 94 L.Ed. 1154 (1950)). In *Burger King,* for instance, the Court held that a Michigan franchisee of the Florida-based Burger King Corporation was subject to personal jurisdiction in Florida. The defendant had applied to the Miami headquarters for a franchise, trained for his new management position in Miami, and bought equipment from a Miami division of the Burger King Corporation.

■ In the present case, Kaplan understood his opinion letter would be sent to Cooper, Trierweiler's attorney. Trierweiler asserts that Kaplan understood the letter would be sent to Cooper in Michigan, and relied on there by Trierweiler. Appellees counter that Cooper himself requested the opinion letter; Machol sent the letter to Dublin in Colorado, not Michigan; and Trierweiler is a Florida resident. They argue that the mere fact that, at one point, Kaplan called Cooper in Michigan does not provide a basis for jurisdiction.

■ Machol's contacts with Michigan do not rise to the level mandated by the due process clause. Machol has no contractual relationship with Trierweiler, and their remaining ties fall far short of the level of "continuing relationships and obligations" exemplified by *Burger King,* 471 U.S. at 473, 105 S.Ct. at 2182 (quotation omitted). Although Machol may have known that the opinion letter to Dublin would be sent, via an intermediary, into Michigan, the mere foreseeability of causing injury in another state "is not a 'sufficient benchmark'" for exercis-

ing personal jurisdiction. *Id.* at 474, 105 S.Ct. at 2183 (quoting *World–Wide Volkswagen,* 444 U.S. at 295, 100 S.Ct. at 566). Rather, "the foreseeability that is critical to due process analysis ... is that the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." *Id.* (quoting *WorldWide Volkswagen,* 444 U.S. at 297, 100 S.Ct. at 567). "[T]here [must] be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Id.* at 475, 105 S.Ct. at 2183 (quoting *Hanson v. Denckla,* 357 U.S. at 253, 78 S.Ct. at 1240). The "purposeful availment" requirement ensures that a defendant will not be haled into a jurisdiction as the result of another party's unilateral acts. *Id.; Far West Capital, Inc. v. Towne,* 46 F.3d 1071, 1075 (10th Cir.1995). Here, the only connection between Machol and Trierweiler was the opinion letter Trierweiler requested. Machol could not have reasonably foreseen being subjected to Michigan jurisdiction on this basis. The fact that Kaplan called Trierweiler's attorney in Michigan does not alter this conclusion. *See Far West,* 46 F.3d at 1077 (phone calls into forum do not themselves establish minimum contacts). We agree with appellees and the district court that Kaplan/Machol's actions do not constitute purposeful availment.

Michigan does not have either general or specific personal jurisdiction over Machol or Kaplan. Colorado choice of law rules apply to these defendants.

### Wenner and the Wenner Partners

Trierweiler asserts that Michigan had specific jurisdiction over Wenner and the Wenner Partners because Wenner signed its audit, consenting to have it filed with the SEC as part of Dublin's Prospectus and Form 10. Trierweiler claims that this demonstrates Wenner knew its audit would be relied on throughout the United States. The magistrate found that Michigan had no jurisdiction, because Wenner "has not committed an act that would allow it to reasonably anticipate being haled into Michigan court." Amended Recommendation of U.S. Magistrate Judge

at 5, 15. The district court adopted this recommendation and we concur with it.

 "'Purposeful availment analysis turns upon whether the defendant's contacts are attributable to his own actions or solely to the actions of the plaintiff ... [and generally] requires ... affirmative conduct by the defendant which allows or promotes the transaction of business within the forum state.'" *Rambo v. American Southern Ins. Co.* 839 F.2d 1415, 1420 (10th Cir.1988) (quoting *Decker Coal v. Commonwealth Edison Co.*, 805 F.2d 834, 840 (9th Cir.1986)). It is difficult to see how Wenner, a Colorado partnership, acted affirmatively to allow or promote business in Michigan. Wenner has no office, employees or agents in Michigan. Wenner's audit was passed on to Trierweiler in Michigan by Dublin. There is no allegation that Wenner knew its audit was to be forwarded to Michigan. Trierweiler merely claims that when Wenner consented to the use of its audit in Dublin's filing documents, it should have foreseen reliance throughout the United States. However, as we have noted above, the mere foreseeability of consequences within the forum state, without more, is insufficient as a basis for jurisdiction. *Burger King,* 471 U.S. at 474, 105 S.Ct. at 2183; *Ten Mile Indus. Park v. Western Plains Service Corp.*, 810 F.2d 1518, 1525 (10th Cir.1987).[6]

Although Wenner might have foreseen reliance, its activities were not enough to constitute purposeful availment. Because Wenner did not purposefully avail itself of Michigan benefits, the district court was correct in concluding that Michigan did not have personal jurisdiction over Wenner. It follows that Colorado choice of law rules applies to Wenner and the Wenner partners.

**B**

 We have determined that Michigan choice of law principles apply to Brasher, and Colorado choice of law applies to the other defendants. Under these respective choice of law rules, Colorado substantive law applies to all defendants. We review choice of law determinations de novo, and findings of fact underlying those determinations for clear error. *Mitchell v. State Farm Fire & Casualty Co.*, 902 F.2d 790, 792 (10th Cir.1990).

**Brasher**

 A venue change under § 1404(a) obligates the transferee court to apply the state law that would have applied in the transferor court. *Van Dusen v. Barrack,* 376 U.S. 612, 639, 84 S.Ct. 805, 820–21, 11 L.Ed.2d 945 (1964). Thus, for choice of law purposes, the "forum state" is the transferor state. See *Schreiber v. Allis–Chalmers Corp.*, 611 F.2d 790, 794 (10th Cir.1979). We therefore disagree with the magistrate's determination—apparently adopted by the district court—that for choice of law purposes Colorado was the forum state.

 Because Michigan is the forum state, Michigan law applies unless "reason requires" that Colorado law should supersede. *Mahne v. Ford Motor Co.*, 900 F.2d 83, 86 (6th Cir.) (quoting *Olmstead v. Anderson,* 428 Mich. 1, 400 N.W.2d 292, 302 (1987)), *cert. denied,* 498 U.S. 941, 111 S.Ct. 349, 112 L.Ed.2d 313 (1990). The court looks first to the foreign state's interest in having its law apply; if one exists, then the court must examine the forum state's interests. *Mahne,* 900 F.2d at 87. The court must consider the policies behind each state's laws, as well as the interest of the states in applying their respective laws to further those policies. *In re Disaster at Detroit Metro. Airport,* 750 F.Supp. 793, 801 (E.D.Mich. 1989).

 In both Colorado and Michigan, professional negligence laws reflect a policy of holding accountable attorneys who fail to

---

**6.** Trierweiler cites district court cases from other circuits in support of the proposition that, by consenting to having its audit filed with the SEC, an auditor becomes subject to jurisdiction anywhere investors and creditors rely on its audit, regardless of how plaintiff acquired the audit. See *Landry v. Price Waterhouse Chartered Accoun-* *tants,* 715 F.Supp. 98, 101 (S.D.N.Y.1989); *Wallace v. Frank,* 662 F.Supp. 876, 879 (E.D.Mich. 1987); *Reingold v. Deloitte Haskins & Sells,* 599 F.Supp. 1241 (S.D.N.Y.1984). None of these cases stand for the proposition plaintiff advances, and we are unwilling to create such a broad rule for this circuit.

abide by acceptable standards of professional conduct.[7] *See Boigegrain v. Gilbert,* 784 P.2d 849, 850 (Colo.Ct.App.1989) (duty owed by attorney to client is one of "that degree of skill, knowledge, and judgment ordinarily possessed by a member of the legal profession at the time the task is undertaken"), *cert. denied,* Apr. 2, 1990; *Radtke v. Miller, Canfield, Paddock & Stone,* 209 Mich.App. 606, 532 N.W.2d 547, 551 (1995) (attorney's duty is one of "reasonable skill, care, discretion, and judgment in the conduct and management of [the client's] case"). However, these regimes vary in ways that are central to the adjudication of this lawsuit. Colorado has a certificate of review statute, Colo.Rev. Stat. § 13–20–602, while Michigan does not, and Colorado's statute of limitations for negligence actions is two years, Colo.Rev.Stat. § 13–80–102(1)(a), while Michigan's limitations period is six years, Mich. Comp. Laws § 600.5813. These differences reflect an approach, on Colorado's part, of reducing the burdens imposed on attorneys by (1) expediting resolution of malpractice suits as efficiently as possible and weeding out frivolous claims, *Martinez v. Badis,* 842 P.2d 245, 250, 251 (Colo.1992) (en banc), and (2) limiting the period within which plaintiffs can sue. Consequently, Colorado does have identifiable interests in applying its law to Brasher's conduct.

Because both Michigan and Colorado laws seek to deter attorney negligence, the state in which the lawyer performs the conduct in question may have a greater interest in having its law apply. *See* Restatement (Second) of Conflicts § 145 cmt. c (1971) ("If the primary purpose of the tort rule involved is to deter or punish misconduct ... the state where the conduct took place may be the state of dominant interest."). Thus, Colorado's negligence regime, with its particular balance between deterring negligence by practitioners and limiting exposure to tort liability, should govern negligence claims against Colorado lawyers practicing in Colorado. Defendant Brasher practices in Colorado, and the relevant conduct here—his au-

thorship of the opinion letter—occurred in Colorado.

■ Trierweiler argues that "Michigan has an overriding interest in protecting persons conducting business within its borders from ... misrepresentation." Opening Br. at 23. Indeed, all negligence rules both regulate misconduct and protect against harm caused by that misconduct. *See* Restatement (Second) of Conflicts § 145 cmt. c ("To some extent, at least, every tort rule is designed both to deter other wrongdoers and to compensate the injured person."). Nevertheless, Colorado's interest in regulating its attorneys' negligent conduct outweighs Michigan's interest in protecting a Florida citizen doing business within Michigan's borders. We conclude that "reason requires" us to apply Colorado substantive law to Trierweiler's claims against Brasher.

## Machol, Kaplan, Wenner and the Wenner Partners

■ Colorado choice of law principles apply to these defendants. The Colorado Supreme Court has adopted the Restatement (Second) of Conflicts § 145 to determine which forum's law should apply in the context of multistate tort litigation, and has recognized that § 145 requires the application of succeeding Restatement sections on particular types of torts. *First Nat'l Bank v. Rostek,* 182 Colo. 437, 514 P.2d 314, 320 (1973). Section 145 lists general factors a court should consider in making choice of law determinations in tort cases; its commentary also suggests following rules focusing on particular torts whenever such rules apply. Restatement (Second) of Conflicts § 145 cmt. a (1971). Section 148 provides us with a rule specifically addressing fraud and misrepresentation claims.

■ Under the Restatement approach, the court should consider the following factors when the defendant's representations and the plaintiff's reliance took place in different states: (1) where the plaintiff acted in reliance on the defendant's representations;

---

**7.** Although Trierweiler asserted both negligence and fraud claims against Brasher, we confine our choice of law analysis to the negligence claim,

because we conclude that Trierweiler abandoned the fraud claim. *See* infra part IV.C.

(2) where the plaintiff received the representations; (3) where the defendant made the representations; (4) domicile, residence, nationality, place of incorporation and places of business of parties; (5) where any tangible subject of the transaction was situated; and (6) where the plaintiff was to perform the contract which he was induced to enter by the false representations. *Id.* at § 148.

■■■ Trierweiler received and relied on the representations in Michigan. However, he was a citizen and resident of Florida, in addition to owning a Michigan residence. Machol is a Colorado professional corporation with its office in Denver, and Wenner is a general partnership also organized under Colorado law, with offices only in Colorado. Both firms performed their work for Trierweiler in Colorado. With respect to each, Dublin forwarded their work to Trierweiler in Michigan; the defendants did not send it themselves. The fifth factor listed above— location of the subject of the transaction—is irrelevant to a purely financial transaction such as this one, which does not concern any tangible thing. *See id.* at § 148 cmt. I (fifth factor applies when the subject is a "tangible thing," and particularly when that thing is land). The sixth factor—where the plaintiff was to render performance under the contract into which he was misled—does not come into play here; the record is devoid of evidence regarding where Trierweiler's performance under the loan agreement was to occur. Additionally, because § 148 does not limit us to the factors it explicitly lists, we note that the transaction involved the financing of Aesir, incorporated in Utah but with a Colorado office; that Machol was hired to render an opinion on the application of Colorado law to the transaction; that Wenner does not appear to have had any contacts with Michigan whatsoever beyond its opinion being forwarded there by a third party; and that the legislative policy analysis in the previous section supports applying Colorado law to these defendants as well. We hold that Colorado law should apply.

## III

■■■ The district court granted the Wenner Partners' motion for summary judgment with respect to Trierweiler's negligent misrepresentation claims against them in *Trierweiler I.* Trierweiler claims that because Michigan's six-year statute of limitations applies, Mich. Comp. Laws 600.5813; *see Blue Cross and Blue Shield v. Folkema,* 174 Mich. App. 476, 436 N.W.2d 670, 673 (1988), this Court should reverse. We review summary judgment de novo. *LaForge v. American Casualty Co.,* 37 F.3d 580, 583 (10th Cir. 1994). Under Fed.R.Civ.P. 56(c), summary judgment is appropriate when there is no genuine dispute over a material fact and the movants are entitled to judgment as a matter of law. *Russillo v. Scarborough,* 935 F.2d 1167, 1170 (10th Cir.1991).

■■■ We have determined that Colorado law should govern. Colorado law subjects negligent misrepresentation claims to a two-year limitations period. Colo.Rev.Stat. § 13–80–102(1)(a); *see Callaham v. First American Title Ins. Co.,* 837 P.2d 769, 771 (Colo.Ct. App.1992). The claim here accrued no later than March 1, 1990. *Trierweiler v. Watt,* No. 93–Z–82, slip op. at 4 (D. Colo. June 13, 1994). The plaintiff added each of the individual Wenner Partners as defendants in his Third Amended Complaint, which was filed on June 15, 1993. Because more than two years passed before these defendants were added, we hold that summary judgment was appropriate.

## IV

Trierweiler next argues that his claims against defendants Machol, Kaplan, Brasher and Wenner were improperly dismissed for failure to file certificates of review.[8] The Colorado certificate of review statute requires plaintiffs' attorneys in professional negligence cases to certify, within sixty days of filing the complaint, that an expert has

---

8. The district court also dismissed Appellant's negligent misrepresentation claim against the Wenner Partners. However, as discussed in Part III supra, Trierweiler's untimely addition of those defendants doomed these claims. There-

fore, the court correctly granted summary judgment in their favor and it is irrelevant whether Trierweiler filed certificates of review with respect to them.

examined their clients' claims and found them to have "substantial justification"; failure to comply with this requirement results in dismissal. Colo.Rev.Stat. § 13–20–602.[9] We agree with the district court that the certificate requirement applies in federal diversity cases, but we reverse on other grounds.

### A

Trierweiler asserts on appeal that the certificate of review statute is procedural in nature, and therefore inapplicable in federal court under the doctrine of *Erie Railroad Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). Defendants contend that the plaintiff failed to make this argument below, and may not do so in this Court. As a threshold matter, we must determine whether Trierweiler is precluded from raising the *Erie* issue on appeal.

■ Generally, issues not argued before the district court will not be considered on appeal. *Singleton v. Wulff,* 428 U.S. 106, 120, 96 S.Ct. 2868, 2877, 49 L.Ed.2d 826 (1976); *Lyons v. Jefferson Bank & Trust,* 994 F.2d 716, 720 (10th Cir.1993). However, in some circumstances, resolution of issues not raised below is justified. *Singleton,* 428 U.S. at 121, 96 S.Ct. at 2877–78. "The matter of what questions may be taken up and resolved for the first time on appeal is one left primarily to the discretion of the courts of appeals, to be exercised on the facts of individual cases." *Id.*

■ The facts of this case persuade us to address the *Erie* issue. First, the issue was not raised by the plaintiff but *was* implicitly ruled upon by the district court. By applying the Colorado statute, the court indicated its decision that the statute was substantive, and therefore applicable in federal court. This distinguishes the present case from cases like *Singleton,* in which the appellate court ruled on the merits of a case which had been dismissed on standing grounds by the district court. In *Singleton,* the district court was never presented with the merits issue that the appellate court reached, and the adversely affected party never briefed the issue. *Id.* at 120, 96 S.Ct. at 2877. Here, the district court implicitly addressed the issue, the appellant explicitly challenged the court's determination in his appellate brief, and the appellees had, but declined, the opportunity to respond.

■ Second, plaintiff's argument concerns a purely legal question: whether the Colorado statute is substantive or procedural for *Erie* purposes. This mitigates the force of the considerations underlying the policy of refusing to consider issues not raised below. *See Stahmann Farms, Inc. v. United States,* 624 F.2d 958, 961 (10th Cir.1980). As a general rule, that policy is " 'essential in order that parties may have the opportunity to offer all the evidence that they believe relevant to the issues ... [and] in order that litigants may not be surprised on appeal by final decision there of issues upon which they have had no opportunity to introduce evidence.' " *Lyons,* 994 F.2d at 720 (quoting

---

9. When the events in question occurred, § 13–20–602 read in pertinent part:

(1) In every action for damages or indemnity based upon the alleged professional negligence of a licensed professional, the plaintiff's or complainant's attorney shall file with the court a certificate of review, for each licensed professional named as a party, as specified in subsection (3) of this section, within sixty days after the service of the complaint, counterclaim, or cross claim against such licensed professional unless the court determines that a longer period is necessary for good cause shown.

. . . .

(3) (a) A certificate of review shall be executed by the attorney for the plaintiff or complainant declaring:

(I) That the attorney has consulted a person who has expertise in the area of the alleged negligent conduct; and

(II) That the professional ... has reviewed the known facts relevant to the allegations of negligent conduct and, based on such facts, has concluded that the filing of the claim, counterclaim, or cross claim does not lack substantial justification within the meaning of section 13–17–102(4).

. . . .

(4) The failure to file a certificate of review in accordance with this section shall result in the dismissal of the complaint, counterclaim, or cross claim.

Under the section referenced in (3)(a)(II), an action lacks "substantial justification" if it is "substantially frivolous, substantially groundless, or substantially vexatious." Colo.Rev.Stat. § 13–17–102(4).

*Singleton,* 428 U.S. at 120, 96 S.Ct. at 2877) (further citations and quotations omitted). In addition, "we have noted that review of issues not raised below 'would . . . require us to frequently remand for additional evidence gathering and findings.'" *Lyons,* 994 F.2d at 721 (quoting *Hicks v. Gates Rubber Co.,* 928 F.2d 966, 970–71 (10th Cir.1991)). In the present case, the debate is purely legal, and remand on this issue is unnecessary.

For these reasons, we conclude that it is appropriate to reach the issue of whether § 13–20–602 is procedural or substantive for *Erie* purposes.

**B**

The parties do not dispute that the movants are "licensed professionals" within the statute's scope; that the plaintiff's negligence claims also lie within the ambit of the statute; and that the plaintiff failed to file certificates of review within sixty days of serving his complaint. Trierweiler claims that the district court nevertheless erred in dismissing his negligence claims, because § 13–20–602 is a procedural requirement inapplicable in federal courts under the *Erie* doctrine. We disagree.

*Erie* held that federal courts adjudicating diversity jurisdiction claims should apply substantive state law, *Erie,* 304 U.S. at 78, 58 S.Ct. at 822, and federal procedural law, *id.* at 92, 58 S.Ct. at 828 (Reed, J., concurring). However, the line between substance and procedure has proven difficult to demarcate. The Court initially interpreted *Erie* as signifying that the outcome of litigation which was brought in federal court under diversity jurisdiction "should be substantially the same, so far as legal rules determine the outcome of a litigation, as it would be if tried in a State court." *Guaranty Trust Co. v. York,* 326 U.S. 99, 109, 65 S.Ct. 1464, 1470, 89 L.Ed. 2079 (1945). However, later cases modified this understanding.

In *Byrd v. Blue Ridge Rural Electric Cooperative, Inc.,* 356 U.S. 525, 78 S.Ct. 893, 2 L.Ed.2d 953 (1958), the Court evinced a more nuanced approach to making *Erie* choices. It asked whether a particular rule was "bound up with [state-created] rights and obligations in such a way that its application in the federal court is required." *Id.* at 535, 78 S.Ct. at 899. Acknowledging that "were 'outcome' the only consideration, a strong case might appear for saying that the federal court should follow the state practice", the Court nevertheless rejected a strict application of the *Guaranty Trust* outcome-determination test, and, citing "affirmative countervailing considerations" of federal policy, declined to apply the state rule at issue. *Id.* at 537, 78 S.Ct. at 900–01.

■ The Supreme Court has continued to eschew the application of simple litmus tests in distinguishing between substantive and procedural law, except in one case: where a federal rule of procedure is directly on point, that rule applies. *Hanna v. Plumer,* 380 U.S. 460, 471, 85 S.Ct. 1136, 1144, 14 L.Ed.2d 8 (1965) (applying federal, rather than state, service of process rule). Otherwise, in "the typical, relatively unguided *Erie* choice," *id.,* courts are to heed the outcome-determination approach while also relying on the policies underlying the *Erie* rule: "discouragement of forum-shopping and avoidance of inequitable administration of the laws." *Id.* at 467, 468, 85 S.Ct. at 1141–42, 1142.[10]

■ Based on *Erie* and its progeny, then, our first analytical step is to determine whether Colorado's certificate of review statute collides with any federal procedural rule. *Erie* "has never been invoked to void a Federal Rule." *Hanna,* 380 U.S. at 470, 85 S.Ct. at 1143. The question is not whether the federal and state rules overlap. Rather, it is "whether, when fairly construed, the scope of [the Federal Rule] is 'sufficiently broad' to cause a 'direct collision' with the state law or, implicitly, to 'control the issue' before the court, thereby leaving no room for the opera-

10. *Erie* questions are questions of federalism. *See generally* Charles A. Wright, *Law of Federal Courts* § 59 (5th ed.1994). Because the relationship between the state and federal governments are written on the shifting sands of federalism, it is not possible to draw a clear line between "substantive" and "procedural" that will provide the answer in every case. While there is discomfort in uncertainty, *Erie* choices are necessarily left to "the ad hoc determination of judges keenly aware of their responsibilities to two sovereigns." *Id.* at 411.

tion of [the state] law." *Burlington Northern R.R. Co. v. Woods,* 480 U.S. 1, 4–5, 107 S.Ct. 967, 969, 94 L.Ed.2d 1 (1987) (quoting *Walker v. Armco Steel Corp.,* 446 U.S. 740, 749–50, 100 S.Ct. 1978, 1985, 64 L.Ed.2d 659 (1980); *Hanna,* 380 U.S. at 471–472, 85 S.Ct. at 1144–45). For purposes of determining whether state and federal rules collide, federal courts have consistently interpreted the federal rules "with sensitivity to important state interests and regulatory policies." *Gasperini v. Center for Humanities,* — U.S. ——, —— n. 7, 116 S.Ct. 2211, 2219 n. 7, 135 L.Ed.2d 659 (1996).

█ It might be argued that Colo.Rev. Stat. § 13–20–602 collides with Fed.R.Civ.P. 11. Federal Rule 11 requires an attorney or unrepresented party in a civil case to certify that any paper he or she submits to the court is not presented for any improper purpose; contains claims that are either warranted by existing law or by an argument for a change in the law; and makes factual allegations that have or are likely to have evidentiary support. Fed.R.Civ.P. 11(b). It permits the court, subject to certain conditions, to sanction violators. Fed.R.Civ.P. 11(c). The Colorado statute operates in a similar fashion, but is more narrowly tailored, requiring the attorney to affirm that a professional in the field finds the claim to have "substantial justification." Colo.Rev.Stat. § 13–20–602(3)(a)(II). Both rules demonstrate an intent to weed unjustifiable claims out of the system.

Despite the superficial similarity of the two rules, we conclude that they do not collide. Rule 11 and § 13–20–602 "can exist side by side, ... each controlling its own intended sphere of coverage without conflict." *Walker,* 446 U.S. at 752, 100 S.Ct. at 1986. While § 13–20–602 penalizes the party, Rule 11 targets the attorney (although it does apply to unrepresented parties appearing *pro se*). Fed.R.Civ.P. 11(b). Furthermore, § 13–20–602 does not merely operate to discourage frivolous claims; it does so only with respect to lawsuits filed against licensed professionals, and it also seeks "to expedite the litigation process in [such] cases" by imposing a 60–day time limit. *Martinez v. Badis,* 842 P.2d 245, 251 (Colo.1992). By protecting a particular class of defendants, and by expediting such cases, the statute vindicates substantive interests of Colorado not covered by Rule 11. Although the state and federal rules are similar, there is no "direct collision" between the two.

█ Because a Federal Rule is not directly on point, we move to the next step— "the typical, relatively unguided *Erie* choice"—of applying the outcome-determinative test in light of the twin aims of *Erie.* We are reluctant to graft a state-created procedure onto cases appearing in federal court for fear of encroaching on "the constitutional power of the federal government to determine how its courts are operated." Wright, *Law of Federal Courts,* § 59, at 410. However, if that consideration were determinative, most *Erie* choices would be simple. In this case, the imposition on the federal court—one additional filing with the court— is relatively minor. This is not a case where "essential characteristic[s]" of the federal system would be altered if the state rule were applied. *See Byrd,* 356 U.S. at 537, 78 S.Ct. at 901 (declining to apply state rule because it would alter the federal courts' distribution of trial functions between judge and jury).

The policies underlying the *Erie* family of cases militate toward applying the state rule here. The *Erie* Court intended to insure that in diversity cases, "the outcome of the litigation in the federal court should be substantially the same, so far as legal rules determine the outcome of a litigation, as it would be if tried in a State court." *Guaranty Trust,* 326 U.S. at 109, 65 S.Ct. at 1470. Like statutes of limitation, *see id.* at 110, 65 S.Ct. at 1470 (statutes of limitations deemed substantive because they have the capacity to bar recovery altogether in state court, while not applying them in federal court could lead to the opposite result), failure to comply with the Colorado certificate of review law bars recovery altogether. By declining to apply the statute in federal court, we would create a rule of law likely to produce substantially different results in state and federal court.

The dual policies of the *Erie* rule, "discouragement of forum-shopping and avoidance of inequitable administration of the laws," *Han-*

*na,* 380 U.S. at 468, 85 S.Ct. at 1142, also militate toward applying the certificate of review statute in federal court. A plaintiff alleging professional negligence is likely to seek a forum without the certificate of review hurdle either to avoid extra cost, to give himself or herself more time to build a meritorious case, or to increase the settlement value of his or her claims once litigation begins. If the certificate of review requirement applies in state but not federal court, the inequitable result would be a penalty conferred on state plaintiffs but not on those in federal court under diversity jurisdiction.

Stepping back a bit from the practical results of declining to apply the statute in federal court, we note in addition that the policy seems "bound up with [state-created] rights and obligations." *Byrd,* 356 U.S. at 535, 78 S.Ct. at 899. By enacting this measure, the state legislature intended "to expedite the litigation process in cases filed against licensed professionals and to prevent the filing of frivolous actions in this area." *Badis,* 842 P.2d at 251. The balance of interests apparent in the legislative scheme convinces us that the Colorado certificate of review statute manifests "a substantive decision by that State." *Walker,* 446 U.S. at 751, 100 S.Ct. at 1985. The statute is "bound up" with the substantive right embodied in the state cause of action for professional negligence, and therefore it should apply to professional negligence actions brought in federal court under diversity jurisdiction.[11]

### C

Trierweiler raises four arguments against the dismissal of his claims even assuming the state statute is applicable in federal courts: (1) the district court erred in its determination of when the filing deadline occurred; (2) he had good cause for filing late; (3) he filed expert reports which satisfied the certificate of review requirement; and (4) his fraud claim against Brasher was not subject to the certificate of review statute and should not have been dismissed.

■ The parties dispute when the filing period for the certificates expired. The statute requires an attorney to file certificates of review "within sixty days after the service of the complaint ..." Colo.Rev.Stat. § 13–20–602(1). However, Trierweiler suggests that there were three possible trigger dates: (1) when the complaint was served, (2) when the case was transferred to Colorado, or (3) when the District court determined that Colorado law governed the claims against the professionals. Defendants rightly contend that the first of these options was the due date. The plain meaning of the statute is clear, and Trierweiler asserts no authority to the contrary.

We next review whether it was an abuse of discretion for the district court to find that Trierweiler lacked good cause to file the certificates late. Surely, as the district court pointed out, Trierweiler could not have been expected to follow the Colorado statute before the case was transferred to Colorado— he initially asserted the negligence claims under Michigan common law. Even once the case was transferred, Trierweiler adhered to the position that Michigan law applied, and did not comply with the Colorado statute. He claims that the origination of this case in Michigan and its transfer to Colorado create novel issues concerning the application of § 13–20–602, and that therefore we should overturn the district court's finding that good cause was lacking.

The district court stated that upon transfer of the case to Colorado, Trierweiler should have known that Colorado law "might be applied" because there was "significant doubt" about Michigan's personal jurisdiction over several defendants; that numerous motions filed after the transfer of venue should have alerted Appellant that Colorado law would apply; and that the Joint Motion to Dismiss For Failure to File Certificates of Review should have further put Trierweiler on notice. Despite these warning signals, he failed to file the certificates. The district court did not find the application of § 13–20–

---

11. Many other federal courts have applied state statutes imposing similar requirements on professional malpractice litigation. *Connolly v. Fou-*

*dree,* 141 F.R.D. 124, 127–28 (S.D.Iowa 1992), provides a thorough survey of the case law.

602 to a transferred case to be a novel legal issue.

■ We conclude that the district court did not abuse its discretion in finding that Trierweiler lacked good cause to file the certificates late. First, regarding the *Erie* issue, the district court was not without some guidance as to whether the statute was substantive or procedural. *See Hill v. United States,* 751 F.Supp. 909, 910 (D.Colo.1990) (finding the certificate of review statute substantive for purposes of the Federal Tort Claims Act). Moreover, in light of Trierweiler's failure to raise this issue below, we cannot say that it was an abuse of discretion for the court to fail to find it novel enough to support a good cause finding. Second, the choice of law issue—which state's choice of law applies when a transferee court finds that the transferor lacked personal jurisdiction over certain defendants—was also difficult. However, as the district court noted, Trierweiler had ample notice that Colorado law might apply. Despite this notice, he failed to file the certificates or request an extension of time in which to file. It was therefore within the court's discretion to find that no good cause existed for Trierweiler's late filing.

■ Next, Trierweiler argues that he complied with the statute by submitting expert reports to two defendants and the court on and after October 15, 1993. *See* App. 29–32. The reports are not, strictly speaking, certificates in which the plaintiff's attorney declares that he or she has consulted an expert, and the expert—after reviewing the known facts—has found "substantial justification." *See* Colo.Rev.Stat. § 13–20–602(3)(a). They are letters prepared by experts (a resume of each preparer is appended to his report) which state—after reviewing the known facts—that Wenner did not perform work "in accordance with generally accepted auditing standards," App. 29 at 2; App. 30 at 1, and consequently produced "an unqualified opinion" on Dublin's ownership of

the GNMA bonds, App. 30 at 3; and that Machol, Kaplan and Brasher "fail[ed] to meet the standard of conduct required of a reasonably careful attorney ...", App. 31 at 2; App. 32 at 2.

The district court found that the expert reports did not satisfy the certificate of review statute. However, it mistakenly relied on *Martinez v. Badis,* 842 P.2d 245 (Colo. 1992), for the proposition that expert reports might "put plaintiff on notice that a certificate of review was necessary" but could not be accepted in lieu of the reports. *Trierweiler v. Watt,* No. 93–Z–82, slip op. at 7 (D. Colo. June 13, 1994). Contrary to the district court's order, *Badis* makes no mention of expert reports, and we are unable to find authority for the proposition that expert reports cannot satisfy the statute. Although the expert reports were filed more than sixty days after the complaint, it is possible that under § 13–20–602's good cause provision— in light of the confusion over which state's law applied [12] and/or the novelty of the issue of whether expert reports can satisfy the statute—the district court might have accepted them in lieu of the certificates if it had not been under the impression that *Badis* precluded such a holding. We therefore remand on the negligent misrepresentation claims for resolution of this issue.

Finally, Trierweiler argues that even if his failure to file certificates of review did bar his negligent misrepresentation claims, it did not bar his fraud claim against Brasher. The defendants' Joint Motion to Dismiss for Failure to File Certificates of Review only sought dismissal of the negligent misrepresentation claims. However, in granting the motion, the district court dismissed all of the defendants against whom those claims were made. It did not indicate whether it had considered Appellant's fraud claim against Brasher. Defendants insist that Trierweiler abandoned his fraud claim by failing to list it in the pretrial order as an issue for trial. If this is so, of course, whether or not the

---

12. The district court did not make its choice of law determinations until it issued its order of June 13, 1994—the same order in which it dealt with the certificate of review issues. Thus, Trierweiler did not know for certain whether § 13–

20–602 applied until well after the 60–day deadline, the transfer to Colorado, the filing of the Joint Motion to Dismiss for Failure to File Certificates of Review, and the filing of his expert reports.

district court dismissed the claim becomes irrelevant.

■ The pretrial order controls the subsequent course of action in a case unless it is modified by a later order, and it is modified only to prevent manifest injustice. Fed.R.Civ.P. 16(e). We interpret the assertion of an issue not listed in the pretrial order as the equivalent of a formal motion to amend the order, and review the denial of such motions under an abuse of discretion standard. *R.L. Clark Drilling Contractors, Inc. v. Schramm, Inc.,* 835 F.2d 1306, 1308 (10th Cir.1987). The pretrial order in this case lists only a negligent misrepresentation claim against Brasher, although it lists both fraud and negligent misrepresentation claims against certain other defendants no longer involved in this litigation. The plaintiff did not object at any point in *Trierweiler I* to this omission, nor did he include a fraud claim in his complaint against Brasher in *Trierweiler II*. We do not think that the district court's failure to amend the pretrial order resulted in manifest injustice, or was an abuse of discretion, and accordingly our remand does not extend to the fraud claim against Brasher.

### V

■ The district court dismissed all claims against defendant Watt for lack of personal jurisdiction. Trierweiler asserts that Colorado did have both general and specific jurisdiction over Watt, and if personal jurisdiction *was* lacking, the court should have transferred rather than dismissed the claims. We review the district court's jurisdictional rulings de novo. *Doe v. National Medical Servs.,* 974 F.2d 143, 145 (10th Cir. 1992). We review the district court's decision on whether to transfer under a clear abuse of discretion standard. *Scheidt v. Klein,* 956 F.2d 963, 965 (10th Cir.1992). Although we agree that the district court lacked personal jurisdiction, we reverse the district court.

### A

■ Colorado did not have specific jurisdiction over Watt. Trierweiler alleges numer-

ous connections between Watt and Colorado but fails to illustrate adequately how his own alleged injuries arose from Watt's forum-related conduct. Although Watt was engaged in business in Colorado in various capacities in conjunction with Aesir, it does not seem that these in-state activities influenced Trierweiler to make the loans. Trierweiler alleges that Watt called him on the telephone to encourage the investment, but these communications took place while Trierweiler was in Michigan and Watt was in Wyoming. This conduct falls short of the "purposeful availment" required for Colorado to assert specific jurisdiction. *See Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 1239–40, 2 L.Ed.2d 1283 (1958).

■ Colorado did not have general jurisdiction over Watt, either. Trierweiler claims Watt's "continuous and systematic activities" in Colorado sufficed to establish general jurisdiction. Specifically, Trierweiler alleges that Watt: (1) lived in Colorado from 1977–1981 (well before the events at issue here) and was then associated with a local legal foundation; (2) is admitted to practice law in the Tenth Circuit; (3) owned some property in Colorado; (4) has a joint bank account in Colorado; (5) travels here several times a year; (6) was a limited partner in a Colorado limited partnership until 1990; and (7) was a member of the proposed advisory board of Aesir, in which capacity he consulted the officers of C&T and received reimbursement for some travel expenses.

Under general jurisdiction, a nonresident defendant may be subject to a state's jurisdiction even when the alleged injury is not related to the defendant's contacts with the forum state, *Doe,* 974 F.2d at 146, as long as the unrelated contacts are continuous and systematic enough "that the defendant could reasonably anticipate being haled into court in that forum," *id.* The Supreme Court has established this as being a high threshold. *See Helicopteros,* 466 U.S. at 415–17, 104 S.Ct. at 1872–74 (a foreign corporation negotiated a contract in Texas, forwarded checks out of a Texas bank, bought goods and services from a Texas manufacturer, and sent personnel to Texas for training; still, the corporation's contacts were insufficient to al-

low Texas to assert jurisdiction); *see also Doe,* 974 F.2d at 146 (nonresident corporate defendant's contacts with Colorado insufficient to support assertion of general jurisdiction where corporation solicited no business in Colorado but was regularly sent urine samples for testing from Colorado clients). Courts have been equally demanding where defendants were individuals rather than corporations. *See Wilson v. Belin,* 20 F.3d 644, 650–51 (5th Cir.) (denying that Texas could assert general jurisdiction over defendant who carried malpractice insurance through a Texas law firm for one year, did three legal projects in Texas in three years, gave a seminar in Texas, served as a pro bono consultant to a Dallas historical society, wrote a letter-to-the-editor which appeared in a Texas newspaper and a book which was circulated in Texas, and gave interviews to Texas reporters), *cert. denied,* —— U.S. ——, 115 S.Ct. 322, 130 L.Ed.2d 282 (1994); *Core–Vent Corp. v. Nobel Indus. AB,* 11 F.3d 1482, 1490 (9th Cir.1993) (holding that Swedish resident could not be subjected to general jurisdiction in California based on attending five conferences there in four years).

Here, some of Watt's contacts are highly attenuated: owning a joint bank account with his mother, belonging to the Tenth Circuit bar, having lived in Colorado years ago, and having owned property in Colorado. Beyond this, it appears Watt often visits Colorado but does a relatively small amount of business in the state. These contacts do not rise to the "continuous and systematic" level necessary to confer general jurisdiction.

**B**

The final question concerning defendant Watt is whether the claims against him should have been dismissed or transferred. Trierweiler states that he has filed a new action in the United States District Court for the District of Wyoming, where Watt has moved for summary judgment based on the statute of limitations. That action has been stayed pending resolution of this appeal. Trierweiler claims that he would have no statute of limitations problem if the present litigation were transferred to the District of Wyoming rather than dismissed, and that in the interest of justice the Colorado district court should have transferred the case. *See* 28 U.S.C. § 1404(a) ("For the convenience of parties and witnesses, *in the interest of justice,* a district court may transfer any civil action to any other district or division where it might have been brought") (emphasis added); *see also Burnett v. New York Central R.R. Co.,* 380 U.S. 424, 430 n. 7, 85 S.Ct. 1050, 1055 n. 7, 13 L.Ed.2d 941 (1965) (transfer may be required "when dismissal of an action for improper venue would terminate rights without a hearing on the merits because plaintiff's action would be barred by a statute of limitations"). Accordingly, he urges this court to reverse even if we find that Colorado lacked jurisdiction over Watt, and to transfer the case rather than affirming its dismissal.

Watt claims that the district court did not abuse its discretion, because the interest of justice did not dictate that it transfer the case. He bases this on the proposition, adopted by several other circuits, that it is not in the interest of justice to transfer where a plaintiff either realized or should have realized that the forum in which he or she filed was improper. *See, e.g., Nichols v. G.D. Searle & Co.,* 991 F.2d 1195, 1202 (4th Cir.1993); *Spar, Inc. v. Information Resources, Inc.,* 956 F.2d 392, 394–95 (2d Cir. 1992); *Deleski v. Raymark Indus., Inc.,* 819 F.2d 377, 381 (3d Cir.1987); *Cote v. Wadel,* 796 F.2d 981, 985 (7th Cir.1986); *Wood v. Santa Barbara Chamber of Commerce, Inc.,* 705 F.2d 1515, 1523 (9th Cir.1983), *cert. denied,* 465 U.S. 1081, 104 S.Ct. 1446, 79 L.Ed.2d 765 (1984); *Dubin v. United States,* 380 F.2d 813, 816 n. 5 (5th Cir.1967). *But see Bolar v. Frank,* 938 F.2d 377, 380 (2d Cir.1991) (interests of justice merited a transfer because plaintiff might have been time barred from initiating a new action); *Cox Enterprises, Inc. v. Holt,* 691 F.2d 989, 990 & n. 1 (11th Cir.1982) (same).

 We find plaintiff's arguments more compelling for the following reasons. First, it cannot be argued that Trierweiler foresaw or should have foreseen that the forum in which he filed was improper, because in the forum in which he filed (Michigan), jurisdiction may well have been attained over Watt.

Trierweiler did not choose to file in Colorado. Rather, Watt and several other defendants requested that the Michigan court transfer venue to Colorado, though Watt alternatively sought transfer to Utah. Second, the transfer to Colorado, where personal jurisdiction over Watt was lacking, was inappropriate. *Hoffman v. Blaski*, 363 U.S. 335, 343–44, 80 S.Ct. 1084, 1089–90, 4 L.Ed.2d 1254 (1960) (section 1404(a) does not permit transfer to a court where either venue or personal jurisdiction is lacking); *Morris v. Peterson*, 759 F.2d 809, 812 (10th Cir.1985) (same). It is certainly not in the in the interest of justice to refuse to transfer the claims against Watt because Colorado lacks jurisdiction, when the Michigan court wrongly transferred the case to Colorado. Third, as suggested by Trierweiler, at this juncture he faces the risk that his claim may be time-barred in Wyoming, leaving him without the opportunity to reach the merits of his claims against Watt. *See Bolar*, 938 F.2d at 380 (interest of justice warrants transfer, because if case were dismissed, plaintiff would be time barred from initiating new action). The interest of justice resoundingly mandated a transfer in this case.

▮▮▮▮▮ Watt also argues that (1) in the absence of a formal motion to transfer venue, the district court had no duty to consider the transfer issue; and (2) the district court had no authority to transfer individual claims rather than an entire case. Trierweiler did not make a formal motion under § 1404(a) or any other statute. He argued in his objections to the magistrate's recommendations that personal jurisdiction over Watt did exist, but "if the court concludes that Colorado lacks jurisdiction ... the court should transfer the case back to Michigan or to another district having jurisdiction over him." Plaintiff's Objections to Recommendations of Magistrate Judge at 21. In light of the overwhelming considerations of equity discussed above, we find that this objection sufficiently raised the transfer issue. We also note that a court may sever claims under Fed.R.Civ.P. 21, and thereby enable the transfer of claims within a case. *Chrysler Credit Corp. v.*

*Country Chrysler, Inc.*, 928 F.2d 1509, 1518–19 (10th Cir.1991). We hold that it was a clear abuse of discretion not to transfer Trierweiler's claims against Watt. We remand these claims to the district court, and instruct that court to transfer the claims to an appropriate forum.[13]

## VI

On June 13, 1994, the district court granted defendants' Joint Motion To Dismiss and dismissed Wenner, Machol, Kaplan and Brasher without prejudice. On July 1, 1994, Appellant filed *Trierweiler II*, asserting negligent misrepresentation claims against Wenner, Machol, Kaplan and Brasher for a second time. In this action, the court granted summary judgment in favor of defendants, holding that Colorado's statute of limitations had run. It also held that Colorado's Remedial Revival Statute, which would have salvaged the claims, did not apply. Trierweiler claims on appeal that the district court erred in (1) applying Colorado's two-year statute of limitations rather than Michigan's six-year statute of limitations, and (2) finding the Colorado Remedial Revival Statute, Colo. Rev.Stat. § 13–80–111, inapplicable.

▮▮▮▮ Because we reverse and remand on the *Trierweiler I* negligent misrepresentation claims, the issues raised in *Trierweiler II* are not yet ripe for our review. In a recent decision of this Court, we discussed the ripeness doctrine:

> In order for a claim to be justiciable under Article III, it must be shown to be a ripe controversy. Ripeness is peculiarly a question of timing, intended to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements. In short, the doctrine of ripeness is intended to forestall judicial determinations of disputes until the controversy is presented in clean-cut and concrete form.

> As a general rule, determinations of ripeness are guided by a two-factor test,

13. One of Trierweiler's claims against Watt is a negligent misrepresentation claim. However, Watt did not join in the other defendants' Joint Motion to Dismiss for Failure to File Certificates of Review. We therefore remand on *all* of Trierweiler's claims against Watt, including the negligent misrepresentation claim.

requiring us to evaluate both the fitness of the issue for judicial resolution and the hardship to the parties of withholding judicial consideration. In determining whether an issue is fit for judicial review, the central focus is on whether the case involves uncertain or contingent future events that may not occur as anticipated, or indeed may not occur at all.... In assessing the hardship to the parties of withholding judicial resolution, our inquiry typically turns upon whether the challenged action creates a direct and immediate dilemma for the parties.

*New Mexicans for Bill Richardson v. Gonzales,* 64 F.3d 1495, 1499 (10th Cir.1995) (citations, quotations and brackets omitted).

Given our resolution of *Trierweiler I, Trierweiler II* is not justiciable because the issues it presents are not ripe for adjudication. The future course of litigation between the parties to these lawsuits is uncertain, and thus the *Trierweiler II* issues are unfit for judicial review. The parties would suffer no hardship if we withheld resolution of the *Trierweiler II* issues. We therefore direct the district court to vacate its judgment in *Trierweiler II,* and to dismiss that case without prejudice.

## VII

We **AFFIRM** the summary judgment motion granted in favor of the Wenner partners on statute of limitations grounds.

We **REVERSE** and **REMAND** on the district court's dismissal of plaintiffs' *Trierweiler I* negligent misrepresentation claims against defendants on the basis of Colorado's certificate of review statute, for redetermination in accordance with Section IV.C. of this opinion. Accordingly, we also **REMAND** on the *Trierweiler II* negligent misrepresentation claims, with instructions that the district court **VACATE** its judgment and **DISMISS** *Trierweiler II* without prejudice.

We also **REVERSE** the court's dismissal of plaintiff's claims against Watt, and **RE-MAND** to the district court with instructions to transfer to an appropriate venue.