**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JUL 31 2001**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

RICHARD ALBERT DOERING;
KIMBERLY DOERING, AND
STEPHANIE DOERING, infants by
their guardian ad litem, THOMAS J.
BARRETT; RICHARD DOERING,
individually, through Thomas J.
Barrett, personal representative, and
KATHLEEN DOERING, individually,

        Plaintiffs-Appellants,

v.

COPPER MOUNTAIN, INC., a
Delaware corporation,

        Defendant-Appellee,

and

SMEDLEY INDUSTRIES, INC., a
Delaware corporation, formerly known
as Buddy L. Industries, Inc., formerly
known as SLM, Inc.,

        Defendant.

No. 99-1550

---

Appeal from the United States District Court
for the District of Colorado
(D.C. No. 96-D-1951)

Joseph P. La Sala, Of Counsel, (Thomas P. Scrivo, Of Counsel; Louis A. Modugno, Of Counsel, with him on the briefs), McElroy, Deutsch & Mulvaney, Denver, Colorado, for Plaintiffs-Appellants.

Peter W. Rietz, Jere K. Smith, (John Lebsack, White and Steele, P.C., Denver, Colorado, with them on the brief), Rietz and Smith, L.L.C., Dillon, Colorado, for Defendant-Appellee.

_____

Before **BRISCOE**, **BALDOCK**, and **MURPHY**, Circuit Judges.

_____

**MURPHY**, Circuit Judge.

_____

## I. INTRODUCTION

Richie and Kimberly Doering were severely injured in a sledding collision with snow-grooming equipment at Copper Mountain Resort.  Through their *guardian ad litem*, Richie and Kimberly filed suit against Copper Mountain, Inc. ("Copper Mountain") for negligence.  Kathleen Doering, Richie and Kimberly's mother, brought a claim against Copper Mountain for emotional distress. Through her *guardian ad litem*, Stephanie Doering, Richie and Kimberly's sister, also filed a claim against Copper Mountain for emotional distress.  Richard Doering, Richie and Kimberly's father, brought claims against Copper Mountain for emotional distress, loss of consortium, and loss of earnings.  The district court dismissed the claim brought on behalf of Stephanie and the individual claims of Kathleen and Richard.  On Richie's and Kimberly's negligence claims, a jury

returned a verdict in favor of Copper Mountain after finding that their negligence claims were barred by the Ski Safety Act.

The Doerings[1] appeal numerous rulings by the district court. Exercising jurisdiction pursuant to 28 U.S.C. § 1291, this court **reverses** the judgment for the reason that the district court instructed the jury not to consider Copper Mountain's alleged violations of the Ski Safety Act if it found that Richie's and Kimberly's injuries resulted from an inherent danger or risk of skiing. On the remaining issues which this court should decide for remand, we **affirm** the rulings of the district court.

## II. BACKGROUND

On February 18, 1993, Richie and Kimberly, ages four and six respectively (hereinafter "the Doering children"),[2] were sledding under the supervision of their mother, Kathleen, at Copper Mountain Resort. Kathleen had borrowed sleds earlier in the day from the daycare facility at the resort. When Kathleen borrowed the sleds, she was told by the staff that she could use them in the Bellybutton Bump area after the daycare children were no longer occupying the area.

---

[1] Reference to "the Doerings" throughout the opinion includes Richard and Kathleen and their three children, Stephanie, Kimberly, and Richie, or their *guardian ad litem*.

[2] "The Doering children" does not include the eldest child, Stephanie, who was not injured in the sledding accident but who did have a claim filed on her behalf for emotional distress by her *guardian ad litem*.

Kathleen indicated that she was going to pull her children on the sleds around the village. She later took them to a ski trail called "Bouncer." At approximately 4:35 p.m., thirty-five minutes after the ski lifts closed, the Doering children were sledding down the lower portion of Bouncer. Traveling twenty-five to thirty miles-per-hour, the children collided with the blade of a snow-grooming machine, which was traversing the base of the mountain on the haul road. The children suffered severe injuries.

Richie, Kimberly, their older sister Stephanie, through their *guardian ad litem*, and their father Richard (now deceased) filed a complaint against Copper Mountain in the New Jersey Superior Court. The Doering children claimed that Copper Mountain negligently, recklessly, and carelessly operated, maintained, managed, and controlled the site of the accident. They also claimed that Copper Mountain's conduct was willful and wanton. Stephanie brought a claim against Copper Mountain for emotional distress, and Richard brought claims against Copper Mountain for emotional distress, loss of consortium, and loss of earnings. Kathleen instituted a separate action in the New Jersey Superior Court, alleging a single claim against Copper Mountain for emotional distress.

Both cases were removed to the United States District Court for the District of New Jersey and later consolidated. After the cases were consolidated, Copper Mountain filed a motion to dismiss or, alternatively, to transfer to federal district

-4-

court in Colorado. The New Jersey district court transferred the consolidated cases to the United States District Court for the District of Colorado upon resolving that it lacked personal jurisdiction over Copper Mountain. The court alternatively ruled that even if it had jurisdiction, transfer to the Colorado district court would be appropriate for the convenience of the parties and witnesses and in the interest of justice. Since Kathleen was not a party to the action involving the Doering children, Copper Mountain designated Kathleen as a nonparty whose negligent supervision of her children should be considered by the jury pursuant to Colorado Revised Statute § 13-21-111.5. In an amended complaint, the Doering children brought new claims against Copper Mountain, alleging that Copper Mountain violated the Colorado Ski Safety Act.

Copper Mountain filed a motion to dismiss the claims of Richard, Kathleen, and Stephanie for emotional distress and Richard's loss of consortium and loss of earnings claims. Richard's lost earnings claim was dismissed by stipulation. The district court granted Copper Mountain's motion to dismiss the other claims. Thus, the only claims remaining for trial were the claims of the children involved in the accident, Richie and Kimberly. At the conclusion of the case, the district court granted Copper Mountain's motion for judgment as a matter of law on the Doering children's claim for punitive damages. The jury returned a verdict in favor of Copper Mountain after finding that the Doering children's negligence

claims were barred by the Ski Safety Act because their injuries resulted from an inherent danger or risk of skiing.

On appeal, the appellants claim the district court erroneously (1) dismissed the emotional distress claims of Richard, Kathleen, and Stephanie and the loss of consortium claim of Richard; (2) applied the Ski Safety Act to the Doering children; (3) instructed the jury not to consider Copper Mountain's alleged negligence under the Ski Safety Act if it found that the Doering children's injuries resulted from an inherent danger or risk of skiing; (4) denied the Doering children's motion for judgment as a matter of law; (5) dismissed the Doering children's claim for punitive damages; and (6) admitted the deposition testimony of an expert witness.

## III. DISCUSSION

### A. Choice of Law

The federal district court in New Jersey transferred this case to Colorado pursuant to 28 U.S.C. § 1406(a) for improper venue.[3] In its transfer order, the

---

[3] The district court had the authority either to dismiss or transfer the case for improper venue or lack of personal jurisdiction. *See Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 466 (1962) (recognizing a court's authority to transfer a case to another district, if the interests of justice so dictate, when a party files in an improper venue or when a court does not have personal jurisdiction over the defendants); *see also* 28 U.S.C. § 1404 (authorizing the transfer of a case to another district court in which the case would be properly brought for the convenience of parties and witnesses or in the interests of justice); *id.* § 1406 (authorizing a district court to dismiss a case for improper venue or transfer a

district court ruled that it lacked personal jurisdiction over Copper Mountain. After the transfer, the federal district court in Colorado ruled that Colorado choice of law rules and Colorado substantive law applied to the case. Applying Colorado law, the district court then dismissed the emotional distress claims of Richard, Kathleen, and Stephanie and Richard's loss of consortium claim.

The Doerings claim New Jersey choice of law rules and New Jersey substantive law apply to their claims and, therefore, the emotional distress and loss of consortium claims were erroneously dismissed. This court reviews jurisdictional and choice of law determinations *de novo*. *See Intercon, Inc. v. Bell Atl. Internet Solutions, Inc.*, 205 F.3d 1244, 1247 (10th Cir. 2000); *Gschwind v. Cessna Aircraft Co.*, 161 F.3d 602, 608 (10th Cir. 1998). We review the underlying factual determinations, however, for clear error. *See Trierweiler v. Croxton & Trench Holding Corp.*, 90 F.3d 1523, 1535 (10th Cir. 1996).

---

case to another district court in which the case would be properly brought in the interest of justice).

Although the New Jersey district court cited both § 1404(a) and § 1406(a) in its transfer ruling, the Colorado district court determined that the transfer was pursuant to § 1406(a) and that the reference to § 1404(a) had no legal significance. For the purposes of this case, the distinction is immaterial. *See Trierweiler v. Croxton & Trench Holding Corp.*, 90 F.3d 1523, 1532 (10th Cir. 1996) (holding the transferee court's choice of law rules apply if the transferor court lacked personal jurisdiction "even when the case was transferred under 28 U.S.C. § 1404(a)—purportedly for convenience—rather than 28 U.S.C. § 1406(a)—for improper venue—so long as the transfer did in fact cure a jurisdictional defect.").

Generally, when a district court transfers a case to another forum, the transferee court must follow the choice of law rules of the transferor court. *See id.* at 1532. When the transferor court lacks personal jurisdiction, however, the choice of law rules of the transferee court apply. *See id.* To determine which choice of law rules apply to the Doerings' claims, this court must first determine whether the district court in New Jersey had personal jurisdiction over Copper Mountain.

A court obtains jurisdiction over a nonresident defendant in a diversity action if a plaintiff can establish that (1) jurisdiction is proper under the laws of the forum state and (2) the exercise of jurisdiction does not offend due process. *See Far West Capital, Inc. v. Towne*, 46 F.3d 1071, 1074 (10th Cir. 1995). New Jersey's long-arm statute permits the exercise of jurisdiction if it is consistent with due process. *See* N.J.R. 4:4-4(b)(1); *Avdel Corp. v. Mecure*, 277 A.2d 207, 209 (N.J. 1971). Accordingly, the personal jurisdiction inquiry under New Jersey law collapses into the traditional due process inquiry. *See Charles Gendler & Co. v. Telecom Equip. Corp.*, 508 A.2d 1127, 1131-32 (N.J. 1986).

Consistent with due process, a court may exercise personal jurisdiction over a nonresident defendant if minimum contacts exist between the defendant and the forum state such that maintenance of the lawsuit would not offend "traditional notions of fair play and substantial justice." *World-Wide Volkswagen Corp. v.*

*Woodson*, 444 U.S. 286, 291-92 (1980) (quotation omitted). The minimum contacts standard may be met in one of two ways: (1) a court may exercise general jurisdiction if the defendant's contacts with the forum state are continuous and systematic; or (2) a court may exercise specific jurisdiction over a defendant if it purposefully directs activities at residents of the forum and the litigation results from alleged injuries that arise out of or relate to those activities. *See Kuenzle v. HTM Sport-Und Freizeitgeräte AG*, 102 F.3d 453, 455 (10th Cir. 1996).

The Doerings claim the federal district court in New Jersey had both general and specific jurisdiction over Copper Mountain. The Doerings bear the burden of establishing the district court's personal jurisdiction over Copper Mountain. *See OMI Holdings, Inc. v. Royal Ins. Co. of Can.*, 149 F.3d 1086, 1091 (10th Cir. 1998). Because the district court did not hold an evidentiary hearing, the Doerings are only required to make a prima facie showing to defeat Copper Mountain's motion to dismiss, or alternatively, motion to transfer the case. *See id.* The Doerings may establish their prima facie case by demonstrating "facts that if true would support jurisdiction over [Copper Mountain]." *Id.* To defeat the Doerings' prima facie showing, Copper Mountain must demonstrate that the existence of other considerations would render jurisdiction unreasonable. *See id.*

In assessing Copper Mountain's contacts with New Jersey for the purpose of establishing general jurisdiction, this court may consider: (1) whether Copper Mountain solicits business in New Jersey through a local office or agents; (2) whether Copper Mountain sends agents into New Jersey on a regular basis to solicit business; (3) the extent to which Copper Mountain holds itself out as doing business in New Jersey through advertisements, listings, or bank accounts; and (4) the volume of business Copper Mountain conducts in New Jersey. *See Kuenzle*, 102 F.3d at 457. Copper Mountain is a Delaware corporation with its sole place of business in Colorado. It maintains no agents or employees in New Jersey. Prior to the transfer of the case to Colorado district court, one Copper Mountain employee attended two ski industry shows in New Jersey. Although Copper Mountain advertises in national magazines and newspapers, it ran no direct advertising in the New Jersey area during the 1992-93 ski season. Moreover, the mere placement of advertisements in nationally-distributed publications cannot be regarded as "continuous and systematic" in nature. *See Federated Rural Elec. Ins. Corp. v. Kootenai Elec. Coop.*, 17 F.3d 1302, 1305 (10th Cir. 1994). Copper Mountain's contacts with New Jersey are far too limited to establish general jurisdiction.

Although Copper Mountain's contacts with New Jersey are not sufficient to establish general jurisdiction, this court must examine the requirements of

specific jurisdiction. This court must determine whether Copper Mountain purposefully directed its activities at New Jersey residents, and whether the Doerings' claims arise out of or result from activities by Copper Mountain that create a substantial connection with New Jersey. *See OMI Holdings, Inc.*, 149 F.3d at 1091. The Doerings rely on solicitations from Copper Mountain to establish specific jurisdiction. The record indicates that it was "either a magazine advertisement or direct mailing" that prompted the Doerings' first visit to Copper Mountain. Copper Mountain's vice president, however, attested in his sworn affidavit that "Copper Mountain does no direct mailings to anyone in New Jersey unless there is a request for information. Property owners at Copper Mountain receive various mailings in relation to their property." During their first visit, the Doerings inquired about the possibility of purchasing real estate at the resort. Following the visit, they began to receive direct mailings from Copper Mountain advertising the purchase of real estate and the resort itself. Although the solicitation bears on whether Copper Mountain purposefully directed activities at New Jersey residents, it is by no means sufficient to establish specific jurisdiction in this case. *See Soma Med. Int'l v. Standard Chartered Bank*, 196 F.3d 1292, 1299 (10th Cir. 1999). Furthermore, the solicitations were only remotely related to the ski accident which occurred in Colorado two years after the Doerings' first

visit to the resort. The record in this case does not support the existence of minimum contacts sufficient to establish specific jurisdiction.

Having determined that the New Jersey district court did not have personal jurisdiction over Copper Mountain, we conclude the Colorado district court properly applied Colorado's choice of law rules. *See Trierweiler*, 90 F.3d at 1532. To determine which state's substantive law applies when a conflict of law exists, Colorado applies the law of the state with the most significant relationship with the occurrence and the parties. *See Dworak v. Olson Constr. Co.*, 551 P.2d 198, 199 (Colo. 1976) (en banc). Because the injury occurred in Colorado, the alleged negligent conduct occurred in Colorado, and the relationship between Copper Mountain and the Doerings is centered in Colorado, Colorado law controls.

Although the Doerings make no arguments in their brief regarding the merits of their emotional distress and loss of consortium claims under Colorado law, this court concludes the claims were properly dismissed by the Colorado district court. Under Colorado law, a negligent infliction of emotional distress claim requires proof that the plaintiff sustained physical injury or was in the "zone of danger." *See Culpepper v. Pearl St. Bldg., Inc.*, 877 P.2d 877, 880 n.3 (Colo. 1994) (en banc). There is no evidence in the record to support a finding that Richard, Kathleen, or Stephanie suffered physical injury from the snow-

grooming equipment or were in the zone of danger. As for Richard's loss of filial consortium claim, Colorado law does not recognize such a claim. *See Elgin v. Bartlett*, 994 P.2d 411, 417 (Colo. 1999) (en banc). Accordingly, the emotional distress and loss of consortium claims of Richard, Kathleen, and Stephanie were properly dismissed under Colorado law.

## B. Applicability of Ski Safety Act to Minors

The district court found the Ski Safety Act was inconsistent with the common law rule that children under the age of seven cannot be negligent or assume a risk. The district court ruled that the Act thus controlled and the jury could find the Doering children negligent. The Doering children challenge these rulings. This court reviews the district court's interpretation of the Ski Safety Act *de novo*. *See Salve Regina College v. Russell*, 499 U.S. 225, 231 (1991).

The Ski Safety Act sets forth safety standards for the operation of ski areas and for the skiers using them. *See* Colo. Rev. Stat. § 33-44-102; *see also Bayer v. Crested Butte Mountain Resort, Inc.*, 960 P.2d 70, 74 (Colo. 1998) (en banc). A violation of any provision of the Act applicable to skiers constitutes negligence on the part of the skier. *See Bayer*, 960 P.2d at 74; Colo. Rev. Stat. § 33-44-104. The Act defines a "skier" as "*any person* using a ski area for the purpose of skiing; for the purpose of sliding downhill on snow or ice on skis, a toboggan, a sled, . . . or any other device." Colo. Rev. Stat. § 33-44-103(8) (emphasis added).

"Any person" must be read to include all people without regard to age because the plain meaning of the phrase warrants such an interpretation. *See People v. Covington*, 19 P.3d 15, 22 (Colo. 2001) (en banc) (indicating that statutory language must be interpreted according to its plain and ordinary meaning).

At common law, children under the age of seven are incapable of being contributorily negligent. *See Benallo v. Bare*, 427 P.2d 323, 325 (Colo. 1967) (en banc). The common law, however, is inconsistent with the Ski Safety Act, which applies to "any person." Absent clear legislative intent, the common law prevails in any conflict with statutory law. *See Bayer*, 960 P.2d at 74-75. The Ski Safety Act indicates that "[i]nsofar as any provision of law or statute is inconsistent with the provisions of this article, this article controls." Colo. Rev. Stat. § 33-44-114. This provision expresses the Colorado Legislature's clear intent to abrogate the common law when it conflicts with the Act. Accordingly, the district court properly ruled that the Ski Safety Act controls and could render the conduct of the Doering children negligent.

## C. Jury Instructions

The Doering children claim the district court erroneously instructed the jury to consider the inherent dangers and risks of skiing before considering whether Copper Mountain violated the Ski Safety Act, thereby prohibiting the jury from considering whether Copper Mountain violated its statutory duties. This court

reviews the district court's decision to give a particular jury instruction for abuse of discretion. *See Medlock v. Ortho Biotech, Inc.*, 164 F.3d 545, 552 (10th Cir. 1999). We review *de novo* the instructions in their entirety, however, to determine whether the jury was misled. *See id.* Reversal is appropriate only if there was prejudicial error. *See King v. Unocal Corp.*, 58 F.3d 586, 587 (10th Cir. 1995).

The Ski Safety Act bars a skier's claim against a ski area operator "for injury resulting from any of the inherent dangers and risks of skiing." Colo. Rev. Stat. § 33-44-112; *see also Bayer*, 960 P.2d at 76-77. "Inherent dangers and risks of skiing" include "those dangers or conditions which are an integral part of the sport of skiing." Colo. Rev. Stat. § 33-44-103(3.5). The statutory provision defining "inherent dangers and risks of skiing" specifically excludes from the definition "the negligence of a ski area operator as set forth in section 33-44-104(2)." *Id.* Section 33-44-104(2) provides that a ski area operator's violation of any requirement under the Ski Safety Act that results in injury to any person constitutes negligence. Thus, a ski area operator's negligence, which is established by a statutory violation of the Act that causes injury to a skier, is not an inherent danger or risk of skiing.

The Doering children claim their injuries resulted from Copper Mountain's negligence in failing to equip the snow-grooming machine with a visible light, in

violation of section 33-44-108(1) of the Ski Safety Act, and failing to place conspicuous notice that snow-grooming equipment was maintaining the ski trail, in violation of section 33-44-108(2) of the Act. The jury, however, never reached the issue of the alleged statutory violations. Instead, the jury instructions provided the jury with the statutory definition of the inherent dangers and risks of skiing. Absent from the definition was an important exception that excludes the statutory negligence of a ski area operator from the list of inherent dangers and risks of skiing. Without mentioning Copper Mountain's alleged statutory violations, the district court instructed the jury that it must first determine whether the Doering children's negligence claims were barred because of an inherent danger or risk of skiing. The jury was further instructed that it must find for Copper Mountain on the Doering children's negligence claims, and therefore not consider Copper Mountain's alleged statutory violations as set forth in subsequent jury instructions, if the jury found that their claims were barred because of an inherent danger or risk of skiing.

Because the Doering children alleged a statutory violation of the Ski Safety Act, the jury was obligated to determine whether Copper Mountain violated the statutory provisions and, if there was a violation, whether the violation was a cause of the Doering children's injuries. Only after Copper Mountain is found not to have violated the Act can the jury turn to the question of whether an

inherent danger or risk of skiing barred the Doering children's claims. If, on the other hand, a jury were to find that Copper Mountain violated the Ski Safety Act and these violations contributed to the injuries, the children's claims cannot be barred as an inherent danger or risk of skiing.

Barring a skier's claim as an inherent danger or risk of skiing before determining whether a ski area operator violated the Ski Safety Act renders a ski area operator's statutory duties meaningless. Thus, the district court erred by not instructing the jury that (1) it must first determine whether there was a statutory violation by Copper Mountain before turning to the question of whether the Doering children's claims were barred because their injuries resulted from an inherent danger or risk of skiing, and (2) a violation of the Ski Safety Act by Copper Mountain causing a skier injury cannot constitute an inherent danger or risk of skiing.[4] Because there was conflicting evidence adduced at trial on the issue of Copper Mountain's alleged statutory violations, the district court's instructional error was prejudicial.

**D. Remaining Issues**

---

[4] The Doering children further allege that the absence of evidence rendered certain jury instructions unnecessary. Because their arguments are based solely on the sufficiency of the evidence, this court need not address them on appeal. *See White v. Am. Airlines, Inc.*, 915 F.2d 1414, 1421 (10th Cir. 1990).

The Doering children raise other issues on appeal that this court must address because the issues either will arise again on remand or will affect the nature of the retrial. This court, however, need not address the district court's evidentiary ruling on the admission of deposition testimony because it is unlikely to reappear.[5] *See White v. Am. Airlines, Inc.*, 915 F.2d 1414, 1421 (10th Cir. 1990). This court also need not address the Doering children's claims for punitive damages except to note that they are not foreclosed from seeking such damages on remand. *See Heno v. Sprint/United Mgmt. Co.*, 208 F.3d 847, 859 (10th Cir. 2000) (exercising its discretion not to review the issue of punitive damages when remanding the compensatory portion of the case because plaintiff may adduce additional or different evidence at retrial).

At the close of Copper Mountain's presentation of evidence at trial, the Doering children raised three issues in a motion for judgment as a matter of law. They argued that the collision with the snow-grooming equipment was not an inherent danger or risk of skiing. The Doering children further argued that as a matter of law Copper Mountain breached its duty to post conspicuous notice that

---

[5] The district court admitted the deposition testimony of an expert witness pursuant to Rule 804(b)(1) of the Federal Rules of Evidence because the Doering children failed to give Copper Mountain sufficient notice of their decision not to call the witness at trial. *See* Fed. R. Evid. 804(b)(1) (providing hearsay exception for unavailable witness if former testimony given in a deposition may be read into the record). No such notice issue is likely to reappear on remand.

snow-grooming equipment might be present. Finally, they argued the doctrine of parental immunity barred the jury from considering Kathleen's negligence. The district court denied the motion in its entirety. The Doering children now appeal the denial. This court reviews the district court's ruling *de novo*. *See Salve Regina College*, 499 U.S. at 231; *Greene v. Safeway Stores, Inc.*, 98 F.3d 554, 557 (10th Cir. 1996).

1. Inherent Dangers and Risks of Skiing

In its instructions to the jury, the district court included a large portion of the statutory definition of "inherent dangers and risks of skiing." The Doering children claim the instruction was erroneous because there was insufficient evidence to support a finding that they engaged in any of the inherent dangers described in the statute. The crux of their argument, however, is that the definition of "inherent dangers and risks of skiing" does not include collisions with snow-grooming equipment as a matter of law.

Contrary to the Doering children's assertion, a plain reading of the statute does not compel this court to conclude that the list of inherent dangers and risks of skiing as a matter of law necessarily excludes a collision with snow-grooming equipment. The list of inherent dangers and risks of skiing describes "those dangers or conditions which are an integral part of the sport of skiing." Colo. Rev. Stat. § 33-44-103(3.5). Although the Colorado Supreme Court has reserved

the issue of whether the list is exclusive, it has indicated that "[t]he word 'include' . . . ordinarily signifies extension or enlargement and is not definitionally equivalent to the word 'mean.'" *Graven v. Vail Assoc., Inc.*, 909 P.2d 514, 518 n.4 (Colo. 1996) (en banc); *see also Colo. Common Cause v. Meyer*, 758 P.2d 153, 163-64 (Colo. 1988) (en banc) ("The word 'includes' has been found by the overwhelming majority of jurisdictions to be a term of extension or enlargement when used in a statutory definition. The use of 'includes' in the statutory definition of 'political committee,' therefore, connotes that something else is encompassed by the definition beyond what was previously covered by the immediately preceding language." (citations omitted)). Thus, the district court properly instructed the jury by including much of the "inherent dangers and risks of skiing" definition, which enabled the jury to determine whether the collision at issue constituted an inherent skiing danger.[6] Accordingly, the district court properly denied the Doering children's motion requesting the district court to find as a matter of law that a collision with snow-grooming equipment is not an inherent danger or risk of skiing.

---

[6] Whether some occurrence or condition is an inherent danger or risk of skiing is not always a question of law. *See Graven v. Vail Assoc., Inc.*, 909 P.2d 514, 520 (Colo. 1996) (en banc) ("Skiing is a dangerous sport. Ordinary understanding tells us so, and the legislature has recognized that dangers inhere in the sport. Not all dangers that may be encountered on the ski slopes . . . are inherent and integral to the sport, and this determination cannot always be made as a matter of law." (citation omitted)).

## 2. Posting of Warning Signs

The Doering children argue the district court failed to instruct the jury that as a matter of law Copper Mountain breached its duty to post conspicuous notice that snow-grooming equipment was present. The Ski Safety Act provides that a ski area operator must place a conspicuous notice "at or near the top of [a] ski slope or trail" when snow-grooming equipment is being used on the slope or trail. Colo. Rev. Stat. § 33-44-108(2). Although the snow-grooming equipment operator was not actually grooming the haul road, a sign still might be required if the operator was merely traversing the road. *See Phillips v. Monarch Recreation Corp.*, 668 P.2d 982, 985-86 (Colo. Ct. App. 1983). The question of whether Copper Mountain breached its duty to post signs, however, was in dispute. There was conflicting testimony on the issue of whether the road on which the snow-grooming equipment operator traversed was a designated "slope" or "trail," as defined in § 33-44-103(9), which would require the posting of a sign. Thus, the district court properly submitted to the jury the issue of Copper Mountain's alleged failure to post conspicuous notice.[7] The issue of whether Copper Mountain breached its duty to post proper notice is part of the larger issue of

---

[7] As noted above, however, the jury never reached this issue because of the jury instruction that required the jury to first assess whether the injuries to the Doering children flowed from an inherent danger or risk of skiing and ended the jury's deliberation if it so found.

whether Copper Mountain violated the Ski Safety Act, which this court is remanding for a new trial. Whether Copper Mountain breached its duty to post signs is a question of fact for the jury to determine on remand.

3. Consideration of the Negligence of a Nonparty[8]

Prior to trial, Copper Mountain designated Kathleen Doering as a nonparty whose alleged negligence could be considered in the comparative negligence analysis pursuant to Colorado Revised Statute § 13-21-111.5(3)(b). This provision requires jurors to apportion fault among joint tortfeasors, whether named as a defendant or a designated nonparty, whose fault or negligence contributed to a plaintiff's injuries. *See* Colo. Rev. Stat. § 13-21-111.5(1). The Doering children argue the parental immunity doctrine bars Kathleen's designation as a nonparty.

Colorado courts recognize a qualified parental immunity doctrine, which prohibits a child from suing a parent for simple negligence. *See Farmers Ins. Exch. v. Dotson*, 913 P.2d 27, 33 n.6 (Colo. 1996) (en banc); *Schlessinger v. Schlessinger*, 796 P.2d 1385, 1387 (Colo. 1990) (en banc). Even a person who is immune from suit, however, may be a nonparty designee so long as the person

---

[8] The jury never considered Kathleen's alleged negligence because it was instructed not to do so if it found, as it did, that the Doering children's claims were barred because of an inherent danger or risk of skiing. Nonetheless, this court resolves the legal issue raised on appeal because it is an issue that will arise again on remand.

owes a duty of care to the injured plaintiff. *See e.g., Williams v. White Mountain Constr. Co.*, 749 P.2d 423, 428-29 (Colo. 1988) (en banc) (recognizing an employer may be designated as a nonparty despite immunity from suit); *Miller v. Byrne*, 916 P.2d 566, 577-78 (Colo. Ct. App. 1995) ("[A] defendant will still only be 'liable' for such defendant's share of the whole 'liability' because it shoulders only the amount of negligence or fault that properly 'belongs' to it, while designated nonparties who owe a duty and but for immunity would be 'liable' to the plaintiff are charged with the balance."). When the Colorado Supreme Court adopted the parental immunity doctrine, it indicated that courts adhering to the doctrine did so for public policy reasons, not because parents owe no duty of due care to their children. *See Trevarton v. Trevarton*, 378 P.2d 640, 642 (Colo. 1963). The Court described the policy considerations underlying its decision to adopt the doctrine, including "the preservation of family harmony, the maintenance of legitimate parental authority and control, and the safeguarding of family assets by protecting against asset depletion resulting from a judgment in favor of the child against the parent." *Schlessinger*, 796 P.2d at 1389.

The duty of care Kathleen owed her children arose either as a result of the special relationship between a parent and child or as a result of the foreseeable risk of injury from Kathleen's failure to take protective action to prevent Richie's and Kimberly's injuries. *See Connes v. Molalla Transp. Sys., Inc.*, 831 P.2d

-23-

1316, 1320 (Colo. 1992) (en banc); *Univ. of Denver v. Whitlock*, 744 P.2d 54, 58 (Colo. 1987) (en banc) (acknowledging the special relationships recognized by courts). Whether it was the special relationship or the foreseeable risk of injury that established a duty of care in this case is immaterial. Kathleen owed a duty to her children. Thus, despite the effect of the parental immunity doctrine, Kathleen was properly designated as a nonparty whose alleged negligence could be considered by the jury.

## IV. CONCLUSION

This court **REVERSES** the judgment due to error in the jury instructions. The case is **REMANDED** for a new trial consistent with this opinion. This court need not address the evidentiary issue and punitive damages claim on appeal. The district court is **AFFIRMED** on all other issues raised on appeal.