**Sandra GIFFORD, Plaintiff–Appellant–Cross–Appellee,**

v.

**VAIL RESORTS, INC., a Colorado corporation, Defendant–Appellee–Cross–Appellant.**

**Nos. 01–1155, 01–1191.**

United States Court of Appeals, Tenth Circuit.

June 14, 2002.

Before KELLY, BRISCOE, and LUCERO, Circuit Judges.

## ORDER AND JUDGMENT[*]

BRISCOE, Circuit Judge.

After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of these appeals. *See* Fed. R.App. P. 34(a)(2); 10th Cir. R. 34.1(G). The cases are therefore ordered submitted without oral argument.

In this diversity case, plaintiff-appellant Sandra Gifford, appearing pro se, appeals a jury verdict and judgment entered in favor of defendant-appellee Vail Resorts, Inc. (Vail) on her negligence claims for the wrongful death of her son. Vail has filed a cross-appeal from the district court's denial of Vail's motion for judgment as a matter of law under Fed.R.Civ.P. 50 and the court's decision to permit Ms. Gifford's expert witness to testify regarding certain matters. We have jurisdiction over this appeal under 28 U.S.C. § 1291. We affirm

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

the judgment in favor of Vail and dismiss the cross-appeal as moot.

## I.

Christopher Gifford was Ms. Gifford's twenty-three year old son. On January 11, 1997, Mr. Gifford, who was an expert skier and a Vail season pass holder, was skiing on Morning Side Ridge in the Back Bowls at the Vail ski area in Vail, Colorado. Over three feet of new snow had fallen during the preceding three days, including seventeen inches of new snow that morning. Mr. Gifford fell in deep snow after skiing into or across a natural gully located near the bottom of Morning Side Ridge. He was unable to extricate himself from the snow and died of asphyxiation due to suffocation.

The gully where Mr. Gifford's accident occurred is located within the boundaries of the Vail ski area, and the area is designated as a "most difficult" skiing area. At the time of Mr. Gifford's accident, a portion of the gully was marked with two or three bamboo poles, but the gully was open to skiers and it was not marked with any signs.

Ms. Gifford filed a wrongful death suit against Vail in federal district court, alleging that Vail was negligent in failing to properly mark and warn skiers of the gully where the accident occurred, and that Vail's negligence was the cause of her son's death. Ms. Gifford also alleged that Vail was negligent per se under the Colorado Ski Safety Act because the gully constituted a "danger area" which should have been marked with a "Danger" sign in accordance with Colo.Rev.Stat. § 33–44–107(2)(d). A jury found that Mr. Gifford's accident was the result of one or more of the inherent dangers and risks of skiing. The district court therefore entered judgment in favor of Vail under the Ski Safety Act, see id. at § 33–44–112 (providing that "no skier may make any claim against or recover from any ski area operator for injury resulting from any of the inherent dangers and risks of skiing").

## II.

Ms. Gifford claims the district court erred in: (1) instructing the jury to determine whether the accident was the result of an inherent danger and risk of skiing without first determining whether Vail violated the Ski Safety Act; (2) failing to properly instruct the jury regarding the inherent dangers and risks of skiing under the Act; (3) instructing the jury that her expert witness was not an expert and could not offer expert testimony; and (4) allowing into evidence a release and waiver of liability that was invalid under Colorado law.

### A.  Alleged *Doering* Error

On the same day Ms. Gifford filed her opening brief in this appeal, this court filed its opinion in *Doering ex rel. Barrett v. Copper Mountain, Inc.*, 259 F.3d 1202 (10th Cir.2001). In *Doering*, we reversed a jury verdict and judgment entered in favor of the defendant under the Colorado Ski Safety Act, holding that the district court's jury instructions were not in accordance with the Act. *Id.* at 1212–13. Ms. Gifford argues in her response brief that the same instructional errors occurred in this case,[1] and that *Doering* requires that

---

1. Although Ms. Gifford's failure to raise the alleged *Doering* error in her opening brief would normally constitute a waiver of that error, we decline to find a waiver here given the importance of the *Doering* issue under the Colorado Ski Safety Act and the fact that our opinion in *Doering* was filed on the same day Ms. Gifford filed her opening brief. Further, while Ms. Gifford's failure to raise the instructional errors at trial constitutes a waiver un-

we reverse the jury verdict and judgment. Ms. Gifford failed to specifically raise the instructional errors at trial. Consequently, she is not entitled to relief on appeal unless the instructions are "patently plainly erroneous and prejudicial." *See Zimmerman v. First Fed. Sav. & Loan Ass'n*, 848 F.2d 1047, 1054 (10th Cir.1988). Nonetheless, because we hold that the alleged errors were not prejudicial to Ms. Gifford, the standard of review is not determinative in this case, and we would reach the same result applying a de novo standard of review.[2] *See Doering*, 259 F.3d at 1212 (noting that, while jury instructions are reviewed de novo to determine if the jury was misled regarding the applicable law, "[r]eversal is appropriate only if there was prejudicial error"); *Morrison Knudson Corp. v. Fireman's Fund Ins. Co.*, 175 F.3d 1221, 1236 (10th Cir. 1999) (holding that harmless error analysis is applicable to review challenges to jury instructions in civil cases).

*Doering* involved two children who were injured while sledding on a ski run at Copper Mountain, and the accident occurred when the sled collided with a snow-grooming machine.[3] 259 F.3d at 1207–08. A lawsuit was filed against Copper Mountain on behalf of the children, alleging their injuries were the result of Copper

Mountain's negligence "in failing to equip the snow-grooming machine with a visible light, in violation of section 33–44–108(1) of the Ski Safety Act, and failing to place conspicuous notice that snow-grooming equipment was maintaining the ski trail, in violation of section 33–44–108(2) of the Act." *Id.* at 1213. A jury returned a verdict in favor of Copper Mountain, finding that the accident resulted from an inherent danger and risk of skiing. *Id.* at 1208. The jury did not reach the issue of whether Copper Mountain violated the Ski Safety Act, however, because it was instructed to cease its deliberations if it determined that the sledding accident was the result of an inherent danger and risk of skiing. *Id.* at 1207, 1213.

On appeal, the plaintiffs in *Doering* alleged that the jury instructions were not in accordance with the Ski Safety Act. *Id.* at 1208–09, 1212–13. Because there was conflicting evidence as to whether Copper Mountain was operating the snow-grooming machine in violation of the Act, we agreed with the plaintiffs and held that it was prejudicial, and therefore reversible, error to not instruct the jury "that (1) it must first determine whether there was a statutory violation by Copper Mountain . . ., and (2) a violation of the Ski Safety Act by Copper Mountain causing a skier

der Fed.R.Civ.P. 51, it is this court's general practice to review such errors on appeal under a plain error standard of review that has been modified for civil cases. *See Zimmerman*, 848 F.2d at 1054 (setting forth the "patently plainly erroneous" standard of review). However, the party claiming such plain error "has the heavy burden of demonstrating fundamental injustice", *Medlock v. Ortho Biotech, Inc.*, 164 F.3d 545, 553 (10th Cir.1999) (quotation omitted), and Ms. Gifford has failed to establish such injustice in this case.

2. We also note that Ms. Gifford objected to the district court's verdict form because it instructed the jury to determine whether the subject accident was the result of an inherent

danger and risk of skiing "the first thing right out of the box." Trial Tr., Vol. II at 344–45, 348. Although Ms. Gifford failed to elaborate on her objection, the objection arguably came close to raising the same instructional error raised by the plaintiffs in *Doering*. Further, in its brief on cross-appeal and answer brief (at page 17), Vail argues that *Doering* is at issue in this appeal as a result of Ms. Gifford's appeal of jury instruction No. 10, and Vail has not argued that our review of the *Doering* issue should be only for plain error.

3. Under the Ski Safety Act, the term "skier" includes "any person using a ski area . . . for the purpose of sliding downhill on . . . a sled." Colo.Rev.Stat. § 33–44–103(8).

injury cannot constitute an inherent danger or risk of skiing." *Id.* at 1213.[4]

The district court in this case committed the same error as the district court in *Doering.* Here, the district court instructed the jury to first determine whether Mr. Gifford's accident was the result of one or more of the inherent dangers and risks of skiing. The jury was instructed that it should cease its deliberations and not reach the issue of whether Vail violated the Ski Safety Act if it answered that question in the affirmative. *See* R., Doc. No. 109 at 16–17 and Doc. No. 110 at 1; Trial Tr., Vol. III at 390–91. The jury determined that Mr. Gifford's accident was the result of one or more of the inherent dangers and risks of skiing and returned a verdict in favor of Vail without considering whether Vail violated the Act. *See* R., Doc. 110 at 1–2. While we agree with Ms. Gifford that this was error under *Doering,* we will not reverse the district court because the error was not prejudicial.

Ms. Gifford alleged that Vail violated the Ski Safety Act because the gully where her son died constituted a "danger area" that should have been marked in accordance with Colo.Rev.Stat. § 33–44–107(2)(d).[5] While the statute does not define the term "danger area," it expressly provides that

"[d]anger areas do not include areas presenting inherent dangers and risks of skiing." Colo.Rev.Stat. § 33–44–107(2)(d); *see also Graven v. Vail Assocs., Inc.,* 909 P.2d 514, 518 (Colo.1995) (construing § 33–44–107(2)(d) and holding that ski area operators are not required to post danger signs in areas that present inherent dangers and risks of skiing). Thus, unlike *Doering,* the alleged statutory violation in this case is inextricably linked to the inherent danger and risk issue, and the question of whether Vail violated the Act is wholly dependent on that issue.

■ The jury specifically found that Mr. Gifford's accident was the result of one or more of the inherent dangers and risks of skiing. *See* R., Doc. No. 110 at 1. We will treat the jury's finding as the equivalent of a determination that the gully where the accident occurred was not a danger area requiring a danger sign under § 33–44–107(2)(d). Accordingly, the *Doering* error was not prejudicial, and it is not grounds for a new trial.

## B. Jury Instruction No. 10

In instruction No. 10, the district court instructed the jury as follows:

statutory violation of the Act which causes injury to a skier, is not an inherent danger or risk of skiing." *Id.*

---

4. The basis of our holding in *Doering* was two-fold. First, while the Ski Safety Act bars a skier's claim against a ski area operator "for injury resulting from any of the inherent dangers and risks of skiing," Colo.Rev.Stat. § 33–44–112, "[t]he statutory provision defining 'inherent dangers and risks of skiing' specifically excludes from the definition 'the negligence of a ski area operator as set forth in section 33–44–104(2).'" *Doering,* 259 F.3d at 1212 (quoting Colo.Rev.Stat. § 33–44–103(3.5)). Second, § 33–44–104(2) provides that "a ski area operator's violation of any requirement under the Ski Safety Act that results in injury to any person constitutes negligence." *Id.* Applying these two provisions, we concluded that "a ski area operator's negligence, which is established by a

5. Under the Ski Safety Act, in addition to danger areas, a ski area operator has a duty to mark certain manmade objects and any trails or slopes that have been closed to the public. *See* Colo.Rev.Stat. § 33–44–107(4) and (7). However, because it was undisputed that the gully where the accident occurred was open for skiing, *see* Trial Tr., Vol. II at 336, and that it is a natural terrain feature, the only statutory marking issue in this case was whether Vail had a duty to mark the gully with a "Danger" sign under § 33–44–107(2)(d).

You must first determine whether Plaintiff's negligence claim is barred because of one of the inherent dangers and risks of skiing as defined by the Colorado Ski Safety Act ...

Not all dangers that may be encountered on the ski slopes are inherent and integral to the sport of skiing. However, the statute defines the inherent dangers and risks of skiing to be ["] those dangers or conditions which are an integral part of the sport of skiing, including changing weather conditions; snow conditions as they exist or may change, such as ice, hard pack, powder, packed powder, wind pack, corn, crust, slush, cut-up snow, and machine-made snow; surface or subsurface conditions such as bare spots, forest growth, rocks, stumps, streambeds, and trees, or other natural objects, and collisions with such natural objects; impact with lift towers, signs, posts, fences or enclosures, hydrants, water pipes, other man-made structures and their components; variations in steepness or terrain, whether natural or as a result of slope design, snowmaking or grooming operations, including but not limited to roads and catwalks or other terrain modifications; collisions with other skiers; and the failure of skiers to ski within their own abilities.["]

R., Doc. No. 109 at 16 (quoting Colo.Rev. Stat. § 33–44–103(3.5)).

Ms. Gifford objected at trial to instruction No. 10, arguing that the district court should have further instructed the jury regarding the limitations on the terms "inherent" and "integral" which she claims the Colorado Supreme Court adopted in *Graven*, 909 P.2d 514. *See* Trial Tr., Vol. II at 325–28. According to Ms. Gifford, the limitations are: (1) that an injury caused by an unnecessary hazard that a ski area operator could have eliminated by using ordinary care is not an "inherent"

danger and risk of skiing; and (2) that the danger and risk are "integral" to the sport of skiing only if reasonably foreseeable. *Id.; see also* Aplt.'s Opening Br. at 12–13. These limitations are derived from the Utah Supreme Court decision in *Clover v. Snowbird Ski Resort*, 808 P.2d 1037, 1047 (Utah 1991) (construing Utah's "Inherent Risk of Skiing Statute"), which the Colorado Supreme Court cited in *Graven*.

In *Graven*, the court held there was an issue for trial concerning whether a ravine that was located in an area adjacent to a ski run at Vail constituted "a variation in steepness or terrain" that was part of the "inherent dangers and risks of skiing." *See Graven*, 909 P.2d at 519–20. The court was careful to note, however, that it was not "suggest[ing] that all imaginable types of terrain changes located *within a ski run* will always fall within the statutory definition of 'variations in steepness or terrain' that are 'inherent dangers and risks of skiing.'" *Id.* at 519 n. 5 (emphasis added). To the contrary, "[n]ot all dangers that may be encountered on the ski slopes, ... are inherent and integral to the sport, and this determination cannot always be made as a matter of law." *Id.* at 520.

*Graven* does not support the limitations proposed by Ms. Gifford. Instead, *Graven* simply stands for the proposition that the detailed listing of dangers and risks in Colo.Rev.Stat. § 33–44–103(3.5) does not foreclose an inquiry concerning whether, based on the specific facts in an individual case, particular dangers and risks are "integral" parts of skiing. *See Graven*, 909 P.2d at 519. Although the court in *Graven* cited *Clover* as support for this proposition, *see id.* (citing *Clover*, 808 P.2d at 1044–45), that was the extent of the court's reliance on *Clover*. Consequently, we reject Ms. Gifford's claim that the court in *Graven* also adopted the portions of *Clover*

where the court stated that a ski area operator's duty of care depends on whether a specific hazard could have been eliminated by using ordinary care or on whether the specific risk was foreseeable.[6] *See Clover*, 808 P.2d at 1047; *cf. Glover v. Vail Corp.*, 955 F.Supp. 105, 109 (D.Colo. 1997) (rejecting argument that *Graven's* citation to *Clover* was meant to signify wholesale adoption of the holding), *aff'd, Glover v. Vail Corp.*, 137 F.3d 1444 (10th Cir.1998).

In accordance with *Graven*, the district court found that, based on the evidence presented by Ms. Gifford, and despite the fact that the accident occurred within a skiable area, there was a factual issue for the jury to resolve concerning whether the subject gully constituted an inherent danger and risk of skiing. *See* R., Doc. No. 66 at 10–11; Trial Tr., Vol. II at 313–14. In instruction No. 10, the court specifically instructed the jury: (1) that the Ski Safety Act "defines the inherent dangers and risks of skiing to be those dangers or conditions which are integral to the sport of skiing," *see* R., Doc. No. 109 at 16; and (2) that "[n]ot all dangers that may be encountered on the ski slopes are inherent and integral to the sport of skiing," *see id.* Accordingly, the district court fully complied with *Graven*, and we hold that instruction No. 10 was in accordance with Colorado law.

### C. Ms. Gifford's Expert Witness

The district court qualified Ms. Gifford's expert witness, Richard Penniman, to give opinions under Fed.R.Evid. 702, *see* Trial Tr., Vol. II at 225–28, but the court prohibited Ms. Gifford from referring to Mr.

Penniman as an "expert" or to his opinions as "expert opinions," *see id.* at 230. Ms. Gifford contends this is reversible error because the district court constructively excluded Mr. Penniman's testimony and thereby misled the jury. We disagree.

Ms. Gifford failed to object at trial to the district court's prohibition against using the terms "expert" and "expert opinions." *See id.* Thus, we may only reverse if the district court's decision was "patently plainly erroneous and prejudicial." *See Zimmerman*, 848 F.2d at 1054.

■ After the district court qualified Mr. Penniman to give opinions under Fed. R.Evid. 702, it specifically instructed the jury that "people who by knowledge, skill, experience, training or education *have become expert in some field* may state their opinions on matters in that field and may also state the reasons for their opinions." Trial Tr., Vol. II at 226 (emphasis added). The court then permitted Mr. Penniman to testify regarding the opinions he had formed in this case based on his investigation of the accident and his general experience as a ski-accident investigator. *See id.* at 230–45. Consequently, the jury was adequately advised as to both the nature and substance of Mr. Penniman's testimony, and the district court's refusal to allow Ms. Gifford to refer to Mr. Penniman as an expert witness was not plainly erroneous or prejudicial.

### D. Season Pass Application

Ms. Gifford claims the district court erred by admitting into evidence, over her objection, a copy of Mr. Gifford's season

---

**6.** We do not mean to suggest, however, that the concept of foreseeability is not relevant to the threshold legal determination which a trial court must make as to whether a particular skiing accident was caused by an inherent danger and risk of skiing as a matter of law. Instead, we are only holding that, once it is determined that the inherent danger and risk issue should go to a jury, the jury should not be instructed that its determination of the issue is dependent on the concept of foreseeability.

pass application because the application contained a release and waiver of liability that was invalid under Colorado law. *See* Trial Tr., Vol. I at 115–16; Exhibit E to Aplt.'s Exhibit List. We review the district court's decision to admit the season pass application for an abuse of discretion. *See Ralston v. Smith & Nephew Richards, Inc.*, 275 F.3d 965, 968 (10th Cir.2001). Under this standard, "[a] trial court's decision will not be disturbed unless [this Court has] a definite and firm conviction that the [trial] court has made a clear error of judgment or exceeded the bounds of permissible choice in the circumstances." *Id.* at 968–69 (quotation omitted).

■ The district court did not abuse its discretion in admitting the season pass application. First, the district court specifically instructed the jury there was no issue concerning a waiver of any claims, and that it was not to treat the application as any sort of waiver. *See* Trial Tr., Vol. I at 116. Second, the application contains the Ski Safety Act's statutory warning regarding a skier's assumption of the inherent dangers and risks of skiing which Colorado ski area operators are required to post at ski areas and set forth on all lift tickets under Colo.Rev.Stat. § 33–44–107(8), and Mr. Gifford acknowledged that he had read the warning when he signed the application. *See* Exhibit E to Aplt.'s Exhibit List. Although Mr. Gifford's knowledge of the statutory warning was not relevant to Vail's liability under the Ski Safety Act, it was arguably relevant to issues of comparative fault. Moreover, the admission of the statutory warning did not unfairly prejudice Ms. Gifford in any way since it merely reiterated the terms of the Ski Safety Act.

7. On September 26, 2001, Vail filed a motion to supplement the record with two video-

The judgment of the district court is AFFIRMED, and the cross-appeal is DISMISSED as moot.[7]

tapes. Vail's motion is granted.